303 F.3d 1104
 DOLE FOOD COMPANY, INC., a Hawaiian corporation, Plaintiff-Appellant,
v.
Malcolm WATTS; Carl Boenneken, Defendants-Appellees, and
Helag Warehousing, a corporation organized under the laws of the Netherlands; Helag Storage & Distribution B.V. a corporation organized under the law of the Netherlands; Helvetia Lagerhaus Gesellschaft AG, Inc., a corporation organized under the laws of the British Virgin Islands; Storerite Ltd., a corporation organized under the laws of the United Kingdom; Eurostore N.V. a corporation organized under the laws of the Dutch Antilles; Delta Property Financing, Ltd., a company organized under the laws of the United Kingdom, Defendants.
 No. 01-55002.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 4, 2002.
 Filed September 10, 2002.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Robert H. Klonoff, Jones, Day, Reavis & Pogue, Washington, DC, for the appellant.
 Simon J. Frankel, Howard, Rice, Nemerovski, Canady, Falk & Rabkin, San Francisco, California, for the appellees.
 Appeal from the United States District Court for the Central District of California; A. Howard Matz, District Judge, Presiding. D.C. No. CV-00-05307-AHM.
 Before: WARDLAW, W. FLETCHER, Circuit Judges, and FOGEL,* District Judge.
 WILLIAM A. FLETCHER, Circuit Judge.
 
 
 1
 Dole Food Company ("Dole" or "Dole U.S.") appeals the district court's dismissal under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction in California of its suit against Malcolm Watts and Carl Boenneken, citizens and residents of European countries. Dole alleges that Watts and Boenneken fraudulently induced Dole, headquartered in California, to lease warehouse space in The Netherlands on unfavorable terms without disclosing that they had ownership interests in the property. We reverse the district court's dismissal for lack of personal jurisdiction, decline to uphold the dismissal on the alternative ground of forum non conveniens, and remand to the district court for further proceedings.
 
 I. Background
 
 2
 We review de novo a district court's determination that it does not have personal jurisdiction over a defendant. See Myers v. Bennett Law Offices, 238 F.3d 1068, 1071 (9th Cir.2001). Where defendants move to dismiss a complaint for lack of personal jurisdiction, plaintiffs bear the burden of demonstrating that jurisdiction is appropriate. See Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir.1990). Where, as here, the motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." Id. In such cases, "we only inquire into whether [the plaintiff]'s pleadings and affidavits make a prima facie showing of personal jurisdiction." Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 128 (9th Cir.1995). Although the plaintiff cannot "simply rest on the bare allegations of its complaint," Amba Marketing Systems, Inc. v. Jobar Int'l, Inc., 551 F.2d 784, 787 (9th Cir.1977), uncontroverted allegations in the complaint must be taken as true. See AT & T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir.1996). Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. See id.; see also Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1087 (9th Cir.2000) ("Because the prima facie jurisdictional analysis requires us to accept the plaintiff's allegations as true, we must adopt [plaintiff]'s version of events for purposes of this appeal.").
 
 
 3
 Plaintiff-appellant Dole U.S. is incorporated under the laws of Hawaii and has its headquarters and principal place of business in California.
 
 
 4
 Defendant-appellee Watts is a citizen of the United Kingdom and lives in France. According to Dole's complaint, Watts was an employee of Dole Europe, which is based and registered in Belgium, from 1971 to 1975, and was an employee of Dole Packaged Foods ("DPF"), a division of Dole U.S., from 1975 until his retirement in 1998. At the time of all the events that form the basis for this suit, Watts was Vice President and Managing Director of European Sales and Marketing for DPF. Watts' duties included management of Dole Holland B.V., a Dutch company, from its formation in 1989 until his retirement. Douglas Jocelyn, who worked at the California headquarters of Dole U.S. as Vice-President of International Sales, had direct supervisory responsibilities over Watts.
 
 
 5
 In his declarations, Watts describes his positions and duties slightly differently. He states that he was employed by Dole Europe from 1971 until his retirement, and that he was "Director of the Belgian and Dutch Dole companies" from an unspecified date until his retirement. Watts avers that he "reported to superiors at Dole in Paris, France" after 1994, but he does not deny that he was supervised by Jocelyn. Indeed, he states that at a time relevant to the events in this suit, Jocelyn gave him a "good" "performance assessment." It is uncontested that from 1971 to 1998, Watts attended management meetings in California once or twice each year, and that Watts currently has at least one California bank account, into which Dole U.S. deposits his pension payments.
 
 
 6
 Defendant-appellee Boenneken is a German citizen who currently lives in Spain. Dole alleges that Boenneken was employed by DPF as its regional in-house counsel from an unspecified date until 1987, and that after 1987 he continued to perform legal services as outside counsel for DPF, Dole Europe B.V., and Dole U.S. Boenneken states in a declaration that he was in-house counsel for Dole Europe from 1978 until 1987 or 1988, and that while so employed he visited Dole's California headquarters "two or three times" on matters unrelated to the events at issue in this suit. After that time, he "occasionally performed discrete legal jobs for Dole" until the end of 1992. Boenneken studied at New York University Law School from 1968 to 1971 and obtained a law degree from that institution.
 
 
 7
 Dole alleges that Watts and Boenneken engaged in an elaborate scheme to defraud Dole U.S. The centerpiece of the scheme was a plan, proposed by Watts and Boenneken, to change Dole's European distribution approach from a "cost and freight" system to a "landed duty paid" ("LDP") system. Dole alleges that, in February 1989, Boenneken attended a presentation on the feasibility of altering Dole's old cost-and-freight system. Dole alleges that Boenneken then outlined in a memorandum to Watts the advantages of the new LDP approach. According to a declaration by Jocelyn, Watts approached Jocelyn with the idea of switching to the LDP system. Watts acknowledges in his declaration that Jocelyn was responsible for approving the plan.
 
 
 8
 Dole alleges that Watts and Boenneken communicated frequently with management in Dole's California's offices via telephone, fax, and mail about the design and implementation of the LDP system. Jocelyn states in his declaration that he had numerous communications with Watts regarding the switch, by telephone and fax while Jocelyn was in California, and in face-to-face meetings during Jocelyn's quarterly visits to the Dole Europe offices. Dole alleges that Watts also traveled to California on multiple occasions and, while in California, encouraged Dole managers to change to the LDP system, advising them that they could save up to $2 million annually. According to Dole, it relied on the information and advice presented by Watts and Boenneken in deciding to change to the LDP system.
 
 
 9
 Dole alleges that after it approved the change, Watts and Boenneken secretly joined with Aart van der Meer to create and own a new entity, Spedtrans Warehousing, to lease warehouse space to Dole at exorbitant rates. Dole alleges that Watts, Boenneken, and van der Meer signed a "Confidentiality Agreement" among themselves to ensure that their arrangement would not be disclosed to others.
 
 
 10
 Watts states in his declaration that van der Meer offered him an interest in the new warehousing entity, but that he refused for ethical reasons. According to Watts, van der Meer persisted, telling Watts that Boenneken had already drafted the Confidentiality Agreement; Watts then threatened to terminate Dole's dealings with van der Meer, but continued with the lease transactions because Jocelyn was pressuring him to complete the deal. Watts states that he never visited California in connection with the negotiation of these leases, but he does not deny communicating with Jocelyn about the leases by telephone and fax while Jocelyn was in California, and does not deny discussing the leases in California while visiting for other purposes.
 
 
 11
 Boenneken does not acknowledge what Dole alleges to be his role in initiating the proposed change. Rather, he states in his declaration that he was "informed and believed that sometime during 1988 Dole decided to make changes to its distribution system in Europe, including leasing additional warehouse space in Rotterdam. Dole was negotiating with one Aart van der Meer concerning obtaining such additional space for Dole." Boenneken states that van der Meer retained him for "legal advice" with respect to negotiations with Dole to lease warehouse space, and that he engaged in "arms length" negotiations with Dole. Boenneken claims that he "do[es] not recall" having any communications with Dole employees in the United States concerning the leases at issue, but, in any event, "any communication I might have had would have been on behalf of Mr. van der Meer." Boenneken states that van der Meer told him that Watts agreed to the proposed partnership, and, on that basis, Boenneken drafted and signed the partnership agreement on their behalf.
 
 
 12
 Jocelyn states in his declaration that during a 1989 visit to California for Dole's International Management Meeting, Watts aggressively pitched to Jocelyn and other California managers the benefits of leasing warehouse space from Spedtrans Warehousing in order to implement the new LDP system. Jocelyn states that he relied on Watts and Boenneken to negotiate a lease on behalf of Dole with van der Meer. According to Jocelyn, neither Watts nor Boenneken ever disclosed any interest in Spedtrans Warehousing.
 
 
 13
 Dole formed a new subsidiary in Holland — Dole Holland, B.V. — to provide the necessary warehouse services to DPF. After approval by Jocelyn and Dole's in-house counsel in California, Dole Holland entered into a lease agreement for warehouse space with Spedtrans Warehousing on November 20, 1989, which Watts signed on behalf of Dole Holland. According to Dole, the rental rate in the lease substantially exceeded the fair market rate for such space in Rotterdam. On December 18, 1989, Jocelyn (for Dole U.S.) and Watts (for Dole Holland) entered into a "Service Agreement," under which Dole U.S. agreed to reimburse Dole Holland for costs associated with Dole Holland's lease of warehouse space. According to Jocelyn, Watts and Boenneken were "instrumental" in devising the terms of the Service Agreement. As a result of the Service Agreement, Dole U.S. was ultimately responsible for all of the costs associated with leasing the warehouse space. Watts later was given authority by Dole U.S. to approve amendments to the lease. According to Dole, Watts exercised this authority to rent additional space and to sign a second lease at above-market rates.
 
 
 14
 Dole sued Watts and Boenneken in federal district court in California, alleging (1) fraud and deceit, (2) conspiracy, (3) constructive fraud, (4) breach of fiduciary duty, and (5) conversion. Watts and Boenneken moved for dismissal on grounds of lack of personal jurisdiction, forum non conveniens, and defective service of process. The district court dismissed the action under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, without reaching the other grounds. Dole timely appealed.
 
 II. Personal Jurisdiction
 
 15
 Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits. See Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir.1998). Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same. See id. (citing Cal. Code Civ. Proc. § 410.10). For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least "minimum contacts" with the relevant forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotation marks and citation omitted).
 
 
 16
 Even if a defendant has not had continuous and systematic contacts with the state sufficient to confer "general jurisdiction," a court may exercise "specific jurisdiction" when the following requirements are met:
 
 
 17
 (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
 
 
 18
 (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
 
 
 19
 (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.
 
 
 20
 Caruth, 59 F.3d at 127 (quoting Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1485 (9th Cir.1993)) (quoting Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir.1987)) (quotation marks omitted) (emphasis added). We analyze these three requirements in turn.
 
 A. Purposeful Direction or Availment
 
 21
 Under our precedents, the purposeful direction or availment requirement for specific jurisdiction is analyzed in intentional tort cases under the "effects" test derived from Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). In Calder, the Supreme Court determined that California courts could exercise jurisdiction over an editor and a reporter who caused a defamatory article about a California resident to be published in Florida and circulated in California, on the ground that the tortious conduct was "expressly aimed" at the forum state in which harm occurred. See id. at 788-89, 104 S.Ct. 1482. As we have previously recognized, Calder stands for the proposition that purposeful availment is satisfied even by a defendant "whose only `contact' with the forum state is the `purposeful direction' of a foreign act having effect in the forum state." Haisten v. Grass Valley Med. Reimbursement Fund, 784 F.2d 1392, 1397 (9th Cir.1986) (emphases omitted); see also Bancroft & Masters, 223 F.3d at 1087 ("In Calder, the Supreme Court held that a foreign act that is both aimed at and has effect in the forum state satisfies the purposeful availment prong of the specific jurisdiction analysis."). Based on these interpretations of Calder, the "effects" test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. Cf. Bancroft & Masters, 223 F.3d at 1087; Caruth, 59 F.3d at 128.
 
 1. Express Aiming at the Forum State
 
 22
 Because it is clear that Dole has sufficiently alleged that Watts and Boenneken acted intentionally, we skip to the "express aiming" requirement. That requirement is satisfied when "the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." Bancroft & Masters, 223 F.3d at 1087. In Bancroft & Masters, we found "express aiming" at California when the defendant sent a letter to Virginia with the alleged intent and result of disrupting the plaintiff's California business. See id.
 
 
 23
 In this case, Dole alleges that Watts and Boenneken's acts "individually targeted Dole in California." The allegations of "targeting" the forum state in this case are stronger than in Bancroft & Masters, 223 F.3d at 1087, where the non-resident defendant was subject to personal jurisdiction based on his sending a letter to an entirely different forum. Because Watts and Boenneken knew that Dole's principal place of business was in California, knew that the decisionmakers for Dole were located in California, and communicated directly with those California decisionmakers, we conclude that their actions were "expressly aimed" at the forum state. See Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 212 (5th Cir.1999) (finding purposeful availment where the foreign attorney engaged in numerous contacts with a client residing in Texas [the forum state] in the form of letters, faxes, and phone calls which contained fraudulent misrepresentations and thereby caused foreseeable harm in the forum); Data Disc, Inc. v. Sys. Tech. Assoc., 557 F.2d 1280, 1288 (9th Cir. 1977) ("The inducement of reliance in California is a sufficient act within California to satisfy the requirement of minimum contacts where the cause of action arises out of that inducement."). Watts and Boenneken's fraudulent communications were not "untargeted negligence," but rather were "performed for the very purpose of having their consequences felt in the forum state." Brainerd v. Governors of the Univ. of Alberta, 873 F.2d 1257, 1259-60 (9th Cir.1989) (finding specific jurisdiction in Arizona over Canadian defendants who had made allegedly defamatory statements in response to telephone calls directed to them in Canada).
 
 
 24
 A finding of "express aiming" in this case does not mean "that a foreign act with foreseeable effects in the forum states always gives rise to specific jurisdiction." Bancroft & Masters, 223 F.3d at 1087. For example, we do not believe that the mere submission of a fraudulent time card by Dole employees in Europe would constitute a showing of express aiming at California. Nor do we believe that personal jurisdiction may be asserted whenever a foreign employee communicates with a corporation's headquarters about foreign operations. Here, however, Watts and Boenneken are alleged to have communicated directly with Dole's California managers to induce them to implement a new importing system, and, as a consequence, to enter into significant and detrimental contractual arrangements. Moreover, they are alleged to have communicated with Dole managers in California with the specific intent to cause injury to Dole U.S. by means of those very communications.
 
 2. Causing Harm in the Forum State
 
 25
 Showing that the harm caused by Watts and Boenneken was suffered in California (rather than some other place) is not as straightforward as showing that their acts were expressly aimed at that state. At the outset, we are faced with the question of how much harm, or what proportion of the overall harm, must be suffered in California. In Core-Vent, one judge, writing for the majority as to the result, wrote that the "brunt of the harm" must be suffered in the forum state. See 11 F.3d at 1486. However, a dissenter in Core-Vent disagreed, writing that "[i]n Calder, the fact that the author and editor knew the brunt of the harm from their article would be suffered in California was a factor that weighed in favor of purposeful direction, but it was not a prerequisite." Core-Vent, 11 F.3d at 1492 (Wallace, C.J., dissenting). As the dissenter correctly noted, the Supreme Court in Keeton v. Hustler Magazine, 465 U.S. 770, 780, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), decided the same day as Calder, found jurisdiction proper even though it was "undoubtedly true that the bulk of the harm done to petitioner occurred outside [the forum]." Because the third judge joined the dissenter on the issue of purposeful availment, we believe that the dissenter's reading is controlling in Core-Vent as to the proportion of harm in the forum necessary to establish personal jurisdiction under the "effects" test. See Core-Vent, 11 F.3d at 1491 (Fernandez, J., concurring) ("I agree with Chief Judge Wallace that purposeful availment can be found in this case."). We recognize, however, that our subsequent cases have employed the "brunt of the harm" language from Core-Vent. See Bancroft & Masters, 223 F.3d at 1087 (citing Panavision); Panavision, 141 F.3d at 1321 (quoting Core-Vent); Caruth, 59 F.3d at 128 (quoting Core-Vent).
 
 
 26
 Despite the apparent conflict between the Core-Vent line of cases and Keeton, we need not decide whether the effects test requires that the brunt of the harm have occurred within the forum state, or merely that some significant amount of harm have occurred there. See Keeton, 104 S.Ct. at 1477-78 (holding that there was personal jurisdiction despite petitioner suffering only "a small proportion of her total claimed injury" within the forum state). We hold that under either standard, Dole suffered sufficient economic harm in California to give rise to jurisdiction in California.
 
 
 27
 In this case, the harm appears to have been suffered by Dole U.S. rather than its European subsidiaries. Under the terms of the Service Agreement, Dole U.S., through Dole Holland, pays all of the costs associated with the warehousing space and lease agreement. Thus, Dole U.S. suffers sufficient harm from the lease to warrant jurisdiction, if the harm to Dole U.S. was suffered in California.
 
 
 28
 We therefore face the somewhat metaphysical question of where a corporation suffers economic harm. Several possibilities exist. The harm could be thought to have been suffered where the bad acts occurred; where most of (or at least a threshold fraction of) the corporation's shareholders are located; where the corporation has its principal place of business; or where the corporation is incorporated. However, these possibilities are not mutually exclusive. We need not choose one criterion as the predominant indicator of where a corporate plaintiff suffers economic injury. Nor do we need to choose a single forum, for jurisdictionally sufficient harm may be suffered in multiple forums. See Core-Vent, 11 F.3d at 1486 ("A corporation does not suffer harm in a particular geographic location in the same sense that an individual does.") (emphasis added).
 
 
 29
 Our precedents recognize that in appropriate circumstances a corporation can suffer economic harm both where the bad acts occurred and where the corporation has its principal place of business. In this case, most of the alleged bad acts appear to have been performed from Europe; indeed, based on such a "bad acts" analysis, Watts and Boenneken argue that jurisdiction is proper in Europe rather than here. But, as we have just noted, the existence of jurisdiction in one forum does not necessarily negate the existence of jurisdiction in another forum.
 
 
 30
 In Panavision, we held that jurisdictionally sufficient harm was suffered by Panavision (a Delaware limited partnership and subsequently a Delaware corporation) in California, where it maintained its principal place of business. See 141 F.3d at 1322 n. 2. Although the alleged trademark violations in that case occurred in cyberspace, we found ultimately that the scheme of registering Panavision's domain name in order to extort money from Panavision injured it in California. Id. at 1322. See also Core-Vent, 11 F.3d at 1487 ("Core-Vent's principal place of business was in the forum state and thus any economic effects were arguably ultimately felt there."). In a variety of contexts, other circuit courts have also relied in significant part on the principal place of business in determining the location of a corporation's place of economic injury. See, e.g., Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1388-89 (8th Cir.1991) (The plaintiff corporation "has its principal place of business in the forum state and thus suffered the economic injury there."); Weltover, Inc. v. Republic of Argentina, 941 F.2d 145, 152 (2d Cir.1991) (stating that a corporate plaintiff's financial injuries are directly felt in that plaintiff's principal place of business or place of incorporation); Pittway Corp. v. Lockheed Aircraft Corp., 641 F.2d 524, 528 (7th Cir. 1981) ("The harm that Pittway suffered and for which it seeks to be compensated was purely economic and as such was sustained in Illinois, where Pittway's principal place of business is located and where the repair decision was made eventually resulting in all the damages claimed"); Engine Specialties, Inc. v. Bombardier Ltd., 605 F.2d 1, 19 (1st Cir.1979) ("The place of injury is where plaintiff suffered the harm, i.e., at its place of business, Pennsylvania.").
 
 
 31
 We find this line of cases applicable here. The principal place of business of Dole U.S. is California, and Dole managers in California were induced to approve the injurious transactions. Under these circumstances, we find that Dole U.S. suffered jurisdictionally sufficient economic harm in California. Because of the separate "express aiming" requirement, see supra, our holding that Dole suffered economic harm in California does not mean that the forum in which a corporation has its principal place of business will always have personal jurisdiction over foreign defendants. But when a forum in which a plaintiff corporation has its principal place of business is in the same forum toward which defendants expressly aim their acts, the "effects" test permits that forum to exercise personal jurisdiction.
 
 
 32
 B. Claims Arising Out of Defendants' Activities
 
 
 33
 It is obvious that Dole's claims against Watts and Boenneken arise directly out of their contacts with the forum. As recounted above, the contacts between Watts and Boenneken and the forum state are integral and essential parts of the alleged fraudulent scheme on which Dole bases its suit.
 
 C. Reasonableness
 
 34
 Once it has been decided that a defendant purposefully established minimum contacts with a forum, "he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable" in order to defeat personal jurisdiction. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In determining whether the exercise of jurisdiction comports with "fair play and substantial justice," and is therefore "reasonable," we consider seven factors under our case law: (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. See, e.g., Caruth, 59 F.3d at 128-29. We consider these factors in turn.
 
 1. Purposeful Injection
 
 35
 We have already determined that Watts and Boenneken directed their activities to the forum to a degree sufficient to satisfy the purposeful availment requirement. There may be circumstances under which the level of purposeful injection into the forum supports a finding of purposeful availment yet still weighs against the reasonableness of jurisdiction, but this is not such a case. In Panavision, we found that the purposeful injection factor weighed strongly in plaintiff's favor based only on the facts that defendant acted "knowing that [his registration of the domain name] would likely injure Panavision in California," and that the defendant sent a letter to Panavision in California to demand money in exchange for the registration. 141 F.3d at 1323. By comparison, Watts and Boenneken's alleged interjection into California in this case is significantly greater. Not only did they know that their scheme would injure Dole U.S., which they knew had its principal place of business in California, but they also engaged in repeated communications with Dole managers in California in furtherance of their alleged scheme.
 
 2. Burden on Defendants
 
 36
 The fact that Watts and Boenneken live in Europe weighs against jurisdiction. See Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 114, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."). Both Watts and Boenneken state in their declarations (in identical wording) that "it would be impossibly expensive for me as an individual in Europe to defend myself against Dole's complaint, and I would simply be unable to participate in such litigation."
 
 
 37
 We recognize that it would be expensive and inconvenient for Watts and Boenneken to defend themselves in California. But this factor is not dispositive. "[M]odern advances in communications and transportation have significantly reduced the burden of litigating in another country." Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1199 (9th Cir.1988). Moreover, several facts mitigate the burden in this case. Both Watts and Boenneken are able to speak, read, and write English with ease. Boenneken has received a law degree from New York University and is intimately familiar with the U.S. legal system. Both Watts and Boenneken have traveled to the United States on several occasions in the past for business; indeed, as noted above, some of Watts' past travel is directly related to the events that gave rise to this suit.
 
 
 38
 3. Conflict with the Sovereignty of Defendant's State
 
 
 39
 The third factor, conflict with the sovereignty of a defendant's state, entails an examination of the competing sovereign interests in regulating Watts' and Boenneken's behavior. We begin by evaluating their U.S.-based relationships. Watts and Boenneken do not now have significant ongoing relationships with the United States, but during the time relevant to this suit both defendants had employment relationships with Dole U.S. and both traveled to the United States with some frequency.
 
 
 40
 The extent of conflict with a foreign state's interest in adjudicating this suit is unclear. At this time, Watts and Boenneken reside in France and Spain, but none of the acts in question have any connection to either of those countries. The Netherlands might have a sovereign interest because the warehouse space is located there, but the validity of the leases or title to any property in The Netherlands is not directly challenged in this case. In sum, this factor only weakly favors defendants if at all.
 
 4. California's Interest
 
 41
 California has a strong interest in providing a forum for its residents and citizens who are tortiously injured. See Panavision, 141 F.3d at 1323. Since Dole's principal place of business is California, this factor favors Dole. The fact that Dole, both directly and through subsidiaries, conducts business in many countries does not alter this conclusion. We recognize that one California case suggests that the California state rule of forum non conveniens rule is intended primarily to benefit plaintiffs whose sole residence is in California, rather than corporations with substantial operations in many states. See Gould, Inc. v. Health Sciences, Inc., 54 Cal.App.3d 687, 693, 126 Cal.Rptr. 726 (1976). However, in Gould, the corporation's principal place of business was Illinois, whereas Dole's principal place of business is California. Further, while forum non conveniens and personal jurisdiction analyses overlap, they are by no means identical. Finally, federal due process law, not California forum non conveniens law, governs the limits of personal jurisdiction.
 
 5. Efficient Resolution
 
 42
 On the current record, it is difficult to determine whether California would be the most efficient forum for resolution of the dispute. The parties dispute which substantive law — California or Dutch-should govern this dispute. The complaint alleges misrepresentations against a California-based company by its fiduciaries based on communications to and from California, but the underlying concealment and damages involve lease transactions in Europe. There are some witnesses in Europe and some in California, so neither forum has a clear efficiency advantage with respect to witnesses. The choice-of-law analysis, discussed infra Part III.C, suggests that California law would be applicable, but at this stage this factor cannot be said to favor either party.
 
 6. Convenience to Dole
 
 43
 If California is not a proper forum, then Dole would be required, in all likelihood, to litigate separate suits in at least two different countries, for there does not appear to be any other single forum that could exercise personal jurisdiction over both Watts and Boenneken. However, in this circuit, the plaintiff's convenience is not of paramount importance. See Caruth, 59 F.3d at 129. Further, Dole's status as a multinational corporation somewhat mitigates the inconvenience of litigating abroad, so this factor does not weigh overwhelmingly in Dole's favor.
 
 7. Alternative Forum
 
 44
 Watts and Boenneken contend that Dole has the burden of proving the unavailability of an alternative forum and that it has failed to do so. See Panavision, 141 F.3d at 1324; Core-Vent, 11 F.3d at 1490; but see Ballard v. Savage, 65 F.3d 1495, 1502 (9th Cir.1995) (stating that defendant "erroneously assum[ed] that the burden is on [plaintiff] to prove the lack of an alternate forum"). In response, Dole contends that this factor should only be considered after defendants otherwise satisfy the burden of overcoming the presumption of reasonableness. See Sinatra, 854 F.2d at 1201 ("Whether another reasonable forum exists becomes an issue only when the forum state is shown to be unreasonable." (quoting Corporate Inv. Business Brokers v. Melcher, 824 F.2d 786, 791 (9th Cir.1987) (alteration omitted))). Our case law appears to be split on this issue, but we need not resolve the split in this case. In their papers, defendants suggest that the District Court in Rotterdam is an adequate alternative forum; however, at oral argument, defendants' counsel conceded that there might not be any single alternative forum that has subject matter and personal jurisdiction over all parties and issues. Therefore, regardless of which side has the burden, this factor favors Dole.
 
 8. Balancing the Reasonableness Factors
 
 45
 Relying on our decision in Core-Vent, and considering all the relevant factors, Watts and Boenneken contend that the exercise of personal jurisdiction would be unreasonable in this case. The plaintiff in Core-Vent alleged that the defendants published articles in two internationally circulated dental journals that defamed dental implants manufactured by Core-Vent. See Core-Vent, 11 F.3d at 1484. Although Core-Vent also involved a California-based corporation as plaintiff and individual foreign citizens as defendants, that case is distinguishable in several important respects. First, the individual defendants in Core-Vent were Swedish doctors who had no U.S.-based relationships whatsoever. See id. at 1489. Second, the defendant doctors' only relevant contacts with the United States were the defamatory effects of two articles that they wrote in the two dental journals. There was no allegation that California readers were the "primary audience" for what they wrote, or that defendants even knew that the journals would be circulated in California. Id. at 1486. In contrast, Watts and Boenneken had several U.S.-based relationships, including employment relationships with Dole. More importantly, the primary — indeed the only — intended audience of the defendants' communication was Dole U.S., headquartered in California.
 
 
 46
 A number of our cases emphasize the heavy burden on both domestic and foreign defendants in proving a "compelling case" of unreasonableness to defeat jurisdiction. For example, in Roth v. Garcia Marquez, 942 F.2d 617 (9th Cir.1991), this court found personal jurisdiction in California over two foreign individual defendants, despite the fact that only two of the reasonableness factors favored plaintiff while three factors favored defendants, and despite the fact that defendants "ma[d]e a strong argument ... that the exercise of jurisdiction may be unreasonable." Id. at 625. See also Panavision, 141 F.3d at 1324 ("[Defendant] failed to present a compelling case that district court's exercise of jurisdiction in California would be unreasonable."); Ballard, 65 F.3d at 1502 (finding personal jurisdiction reasonable over foreign defendant bank); Caruth, 59 F.3d at 129 ("[G]iven the closeness of the factors, we conclude that [defendant] has not presented a `compelling case' that exercising jurisdiction over it would be unreasonable."); Sinatra, 854 F.2d at 1201 (finding personal jurisdiction reasonable over foreign defendant clinic). In this case, only two of the seven factors — burden on defendants and sovereignty conflicts — favor Watts and Boenneken. By their very nature, these two factors are likely to favor foreign defendants every time personal jurisdiction in the United States is considered. See Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1333 (9th Cir.1984) ("[I]f given controlling weight, [the sovereignty factor] would always prevent suit against a foreign national in a United States court."). When we consider all of the factors, we conclude that Watts and Boenneken have failed to overcome the strong presumption of reasonableness of the assertion of personal jurisdiction.
 
 III. Forum Non Conveniens
 
 47
 Because we find personal jurisdiction over defendants, we reach their contention that the action should be dismissed based on the doctrine of forum non conveniens. The district court did not reach this issue, but both parties agreed at oral argument that it is properly before us for decision. Because the record is sufficiently developed and the issue has been presented and argued to us, we agree that it is appropriate for us to decide the question.
 
 
 48
 A party moving to dismiss based on forum non conveniens bears the burden of showing (1) that there is an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal. See Lueck v. Sundstrand Corp., 236 F.3d 1137, 1142-43 (9th Cir.2001). The plaintiff's choice of forum will not be disturbed unless the "private interest" and "public interest" factors strongly favor trial in the foreign country. See Gates Learjet, 743 F.2d at 1334. In Cheng v. Boeing Co., 708 F.2d 1406, 1410 (9th Cir.1983), this court noted that "the standard to be applied [to a motion for dismissal on the ground of forum non conveniens] is whether ... defendants have made a clear showing of facts which ... establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." (internal quotation marks and citation omitted). Forum non conveniens is "an exceptional tool to be employed sparingly,[not a] ... doctrine that compels plaintiffs to choose the optimal forum for their claim." Ravelo Monegro v. Rosa, 211 F.3d 509, 514 (9th Cir.2000). For the reasons that follow, we conclude that defendants have not shown that they are entitled to a dismissal for forum non conveniens.
 
 A. Adequate Alternative Forum
 
 49
 An alternative forum ordinarily exists when defendants are amenable to service of process in the foreign forum. See Lueck, 236 F.3d at 1143 (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). A foreign forum is adequate when it provides the plaintiff with a sufficient remedy for his wrong. See id.
 
 
 50
 Watts and Boenneken argue that The Netherlands provides an adequate alternative forum to hear Dole's claims. The Municipal Court of Rotterdam is already hearing a dispute between Dole and the current lessor of the warehouse space in which the issue is the enforceability of the lease agreements. Defendants claim that the District Court of Rotterdam, which allegedly coordinates its proceedings with the Municipal Court, would have jurisdiction over any claims that Dole could not assert in Municipal Court, including all the claims Dole has asserted in this action. Defendants argue that the adequacy of the Dutch forum is supported by the Service Agreement's choice-of-law/forum selection clause stating that the "validity, interpretation and performance of this [Service] Agreement is to be construed and enforced in accordance with the laws of The Netherlands and the courts in Rotterdam shall be competent."
 
 
 51
 Dole responds that while defendants have asserted the potential existence of subject matter jurisdiction in The Netherlands, they have failed to establish that they could be sued personally there. Neither defendant is a citizen or resident of The Netherlands, nor has either agreed to waive any statute of limitations defenses under the law of The Netherlands. Only Watts has agreed to submit to personal jurisdiction in The Netherlands. Thus, even assuming that there is no valid statute of limitations defense, it is unclear whether there is an alternative forum in The Netherlands, for it is unclear that Boenneken could be compelled to appear in a court there. Cf. Lueck, 236 F.3d at 1143 (holding that alternative forum was available because all defendants had indicated that they would be amenable to service of process in New Zealand); Alpine View Co. Ltd. v. Atlas Copco, 205 F.3d 208, 221 (5th Cir.2000) ("A foreign forum is available when the entire case and all parties can come within the jurisdiction of that forum.") (emphasis added); Stangvik v. Shiley, 54 Cal.3d 744, 752, 1 Cal.Rptr.2d 556, 819 P.2d 14 (1991) (relying on defendants' stipulations that they would all submit to jurisdiction in Sweden or Norway, as well as to tolling of the statute of limitations during pendency of the actions in California). Finally, the applicability of the purported "forum selection" clause to this action is uncertain, to say the least, because Dole does not challenge the terms of the Service Agreement, but rather alleges fraud and breach of fiduciary duty.
 
 B. Private Interest Factors
 
 52
 Private interests of the litigants include ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses, and cost of obtaining attendance of willing witnesses; and likelihood of a fair trial. See, e.g., Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The relative ease of access to proof and cost of calling witnesses are close questions because both sides have witnesses in California and Europe, and the relative numbers of witnesses are unclear from the record. Although the parties have not addressed the availability of formal compulsory process for unwilling witnesses in the respective forums, defendants have argued that it would be more difficult to convince its third-party witnesses (including European associates and Dutch experts) to travel to California than vice-versa, given that Dole's witnesses are (or were) its own employees. See Contact Lumber Co. v. P.T. Moges Shipping Co., 918 F.2d 1446, 1451 (9th Cir.1990) ("Because [defendant] cannot compel these witnesses to appear before U.S. courts, [defendant's] defense and trial preparation could suffer some impediment if the U.S. courts were to retain control of this litigation."). The possibility that litigation could be coordinated with the ongoing litigation in the Municipal Court of Rotterdam might favor dismissal, but the utility of such coordination (even if feasible) is in serious doubt given the apparent unwillingness of Boenneken to appear voluntarily in a Dutch court. Moreover, even if a single suit were possible in The Netherlands, the extent of overlap in witnesses and evidence with the Municipal Court suit is unclear from the record.
 
 C. Public Interest Factors
 
 53
 Public interest factors include court congestion, local interest in resolving the controversy, and preference for having a forum apply a law with which it is familiar. See Lockman Found. v. Evangelical Alliance Mission, 930 F.2d 764, 771 (9th Cir.1991). There is no evidence before us about relative court congestion in The Netherlands and in California. Defendants argue that California has little interest in resolving this dispute "about Dole's European importation and distribution system." But Dole's core claims allege fraud and breach of fiduciary duty perpetrated against Dole U.S., and California has an interest in protecting corporations based in California. The Netherlands' interest in the litigation, stemming from the location of the warehouse space, seems secondary to California's interest in adjudicating claims of fraud and breach of fiduciary duty perpetrated against a company based in California. The determination of applicable law requires a choice of law analysis under California's "governmental interest" approach. See Arno v. Club Med Inc., 22 F.3d 1464, 1467 (9th Cir.1994). Under this test, the law of the sovereign with the greater interest in having its law applied controls. See id. We do not determine here which law applies, but we do note that it is not apparent that the relevant provisions of Dutch and California law actually conflict, and that at the very least it is not clear that Dutch law would be applicable in the event of a conflict.
 
 Conclusion
 
 54
 We reverse the district court's dismissal for lack of personal jurisdiction, decline to uphold the dismissal on the alternate ground of forum non conveniens, and remand to the district court for further proceedings.
 
 
 55
 REVERSED and REMANDED.
 
 
 
 Notes:
 
 
 *
 The Honorable Jeremy D. Fogel, United States District Judge for the Northern District of California, sitting by designation