NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA, a
Pennsylvania corporation, Plaintiff,

v.

AEROHAWK AVIATION, INC.,
an Idaho Corporation, et
al., Defendants.

No. CIV. 02–0520–E–BLW.

United States District Court,
D. Idaho.

April 18, 2003.

Kirk R. Helvie, Shawn C. Nunely, Moffatt Thomas Barrett Rock & Fields, Boise, ID, for Plaintiff.

Michael R. Christian, Marcus Merrick Christian & Hardee, Boise, ID, G. Lance Nalder, Thomsen & Stephens, Idaho Falls, ID, William H. Thomas, Huntley Park, Boise, ID, Michael D. Gaffney, Beard St. Clair Gaffney McNamara Calder, Idaho Falls, ID, Michael W. Moore, Moore Baskin & Parker, Boise, ID, David H. Maguire, Maguire & Kress, Pocatello, ID, Stephen T. Woychick, Boise, ID, Nolan Law Group, Chicago, IL, Craig L. Meadows, Hawley Troxell Ennis & Hawley, Boise, ID, Brendon C. Taylor, Merrill & Merrill, Pocatello, ID, for Defendants.

### ORDER

EDWARD C. REED, Jr., District Judge, Sitting by Designation.

Before the Court are two motions. Defendant Aerospace Control Products, Inc., ("ACP") has moved the Court (# 8/9) under Fed.R.Civ.P. 12(g) for a more definite statement under Fed.R.Civ.P. 12(e) or in the alternative, to dismiss plaintiff National Union Fire Insurance Company of Pittsburgh, PA's ("National Union") complaint for lack of personal jurisdiction under Fed. R.Civ.P. 12(b)(2). National Union opposed the motion and additionally moved the Court (# 10/11) for a stay on its decision on ACP's motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction. ACP did not file an opposition to National Union's motion for stay.

In ACP's reply (# 19) in support of its motion to dismiss under Rule 12(g), it conceded that the Rule 12(e) was moot because National Union provided the information sought in its opposition. ACP subsequently filed a brief (# 20) in support of its Rule 12(b)(2) motion. National Union filed a response (# 25) to that brief and ACP replied (# 37).

### Background

This action arises out of the crash of a Cessna 425 aircraft that occurred on November 10, 2000 near Idaho Falls, Idaho. The pilot and one passenger were killed in the crash and the aircraft was destroyed. The owner of the Cessna, Fred Hibberd, had obtained insurance coverage of $1,003,500.00 from National Union. National Union paid Hibberd the policy proceeds and brought this action.

According to the complaint, the crash occurred during a maintenance test flight, which was being conducted to determine whether the aircraft's autofeathering system was operating properly. National Union brought claims of strict liability and negligence against ACP, among others, alleging that ACP's switches were defectively manufactured and were the cause of the accident.

ACP manufactures autofeathering pressure switches and distributes them exclusively to the Cessna Aircraft Corporation

("Cessna"), which is headquartered in Kansas. ACP's principal place of business in Iowa. ACP asserts it has no business contacts with the state of Idaho. National Union believes that ACP holds itself out as a leading manufacturer and supplier of "flow calibration systems," and that its products are distributed worldwide.

ACP challenges personal jurisdiction, asserting, among other things, that it did not do anything tortious and that it lacks sufficient contacts with the state of Idaho such that the exercise of jurisdiction over it would be unreasonable. National Union counters that jurisdiction is appropriate based on the allegations contained in its complaint. Should the court disagree, however, National Union moves for a stay of our decision while the parties conduct discovery on the matter of jurisdiction.

For the reasons set forth below, we deny ACP's motion for a more definite statement as moot and grant National Union's motion for stay of our decision on ACP's motion to dismiss for lack of personal jurisdiction.

### Analysis

#### I. Motion for More Definite Statement

■ ACP moved for a more definite statement on the basis that the jurisdictional allegations were too vague and ambiguous for ACP to be able to prepare an adequate response. Fed.R.Civ.P. 12(e). National Union premised jurisdiction in the complaint on Idaho Code § 5–514, which provides six ways to invoke personal jurisdiction. Because National Union did not allege under which subsection it sought to assert jurisdiction over ACP, ACP argues it was not able to determine how to properly prepare its challenge to jurisdiction.

In its response to ACP's motion, National Union states that of the six subsections, only two could plausibly be read to apply to this lawsuit: subsection (a), which involves transacting business in the state; or subsection (b), which covers tortious acts occurring in the state. National Union asserts that the tortious act provision applies here.

Because even National Union concedes that either of these two bases could apply, however, we find that ACP's motion was not frivolous. In fact, National Union specified subsection (a) as the jurisdictional basis for a companion case involving the same parties and the same causes of action in Idaho state court. It is more than plausible that ACP would be unclear as to which of these two provisions, subsection (a) or (b), were at issue here. ACP would have suffered prejudice had it been required to defend jurisdiction on grounds that were not applicable since it would have to gather separate evidence to support each defense.

■ Notwithstanding that either subsection (a) or (b) could apply, ACP read National Union's response as asserting that the basis for jurisdiction over ACP is under subsection (b), for tortious acts committed in Idaho. We agree that National Union has committed itself to premising jurisdiction on the tortious act subsection of Idaho Code § 5–514.

In its reply, ACP stated that because it now has a more definite statement on the basis of jurisdiction, its Rule 12(e) motion requesting the same is moot. We decline ACP's invitation to compel National Union to amend its complaint to reflect the more specific jurisdictional basis. As the parties now are clear that jurisdiction under subsection (b) is being asserted, it would be a mere exercise to force National Union to amend its complaint. Accordingly, we deny ACP's Rule 12(e) motion as moot.

#### II. Propriety of ACP's Rule 12(g) Motion

■ Fed.R.Civ.P. 12(g) requires a party moving to dismiss under Rule 12 to join all

of its Rule 12 challenges and objections together. Defenses not included in the consolidated motion are deemed waived. Fed.R.Civ.P. 12(g). National Union argues that ACP did not preserve its right to assert a challenge to personal jurisdiction under Rule 12(b)(2) because its Rule 12(g) motion did not contain ACP's entire argument on the issue. We disagree.

Although ACP did not include its full argument supporting its challenge to personal jurisdiction in its Rule 12(g) motion, it preserved its rights to raise the defense by including the objection in that motion. ACP moved for a more definite statement to obtain sufficient direction to prepare its motion to dismiss for lack of personal jurisdiction. As stated above, we do not find that ACP's motion was frivolous. Instead, it was appropriate to seek a specific allegation of jurisdiction prior to preparing its Rule 12(b)(2) motion.

We see no impropriety in using a Rule 12(g) motion as the vehicle to raise these challenges. Moreover, we do not agree that ACP raised the motion for more definite statement as a means to delay the proceedings. It moved for a more definite statement to ascertain the basis of jurisdiction. Once it learned that National Union sought to premise jurisdiction on the tortious act provision of Idaho's long-arm statute, ACP conceded its motion was moot and promptly filed a brief challenging jurisdiction based on that subsection. Therefore, we reject National Union's argument that ACP has waived its right to challenge personal jurisdiction under Rule 12(b)(2).

## III. Motion to Dismiss for Lack of Personal Jurisdiction

■ ACP moves to dismiss the complaint for lack of personal jurisdiction under both the Idaho long-arm statute and the due process clause. Where defendants move to dismiss a complaint for lack of personal jurisdiction, plaintiffs bear the burden of demonstrating that jurisdiction is appropriate. *Dole Food Co. v. Watts,* 303 F.3d 1104 (9th Cir.2002).

Resting solely on the allegations of the complaint, National Union responds that jurisdiction is proper on both grounds. It contends that we cannot consider any extrinsic facts that ACP has provided in support of its challenge, because doing so would convert this motion into one for summary judgment. This argument fails.

■ Motions to dismiss brought pursuant to Fed.R.Civ.P. 12(b)(2) are speaking motions and it is appropriate to look beyond the pleadings to affidavits and other evidence when considering them. *Data Disc Inc. v. Systems Technology Assocs., Inc.,* 557 F.2d 1280 (9th Cir.1977). When the motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Id.* at 1285. In such cases, we only inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction. *Id.* Where not directly controverted, a plaintiff's version of the facts is taken as true for the purposes of a 12(b)(2) motion to dismiss. *Dole Food,* 303 F.3d at 1108. Therefore, it is proper for us to consider the evidence submitted in support of ACP's motion to dismiss to determine if National Union has made a prima facie showing of jurisdiction.

■ An analysis of personal jurisdiction has two components. First, there must be a statute that gives the court authority to exercise jurisdiction. *Data Disc,* 557 F.2d at 1286. Second, the exercise of jurisdiction must meet Constitutional standards. *Id.*

### A. Idaho Long Arm Statute

■ This court, sitting in diversity, is bound to follow the Idaho Supreme

Court's interpretation of Idaho state law. *State of Idaho v. M.A. Hanna Co.*, 819 F.Supp. 1464 (D.Idaho 1993). As discussed in light of the Rule 12(e) motion, National Union has conceded that it is seeking to establish jurisdiction under Idaho Code § 5–514(b), which states, in relevant part:

Any person, firm, company, association or corporation, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, firm, company, association or corporation, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

(b) The commission of a tortious act within this state.

▮▮▮▮ Idaho courts hold that an allegation that an injury has occurred in Idaho in a tortious manner is sufficient to invoke the tortious act provision of Idaho Code § 5–514(b). *St. Alphonsus Regional Medical Center v. State of Washington*, 123 Idaho 739, 852 P.2d 491, 495 (1993). The negligent act need not take place in Idaho; all that is required is that the injury is alleged to have occurred in Idaho. *Doggett v. Electronics Corp. of Am.*, 93 Idaho 26, 454 P.2d 63 (1969). Idaho Code § 5–514 is designed to provide a forum for Idaho residents. It is remedial legislation of the most fundamental nature and should be liberally construed. *St. Alphonsus*, 852 P.2d at 495.

This action involves liability for damage caused from a crash of a Cessna 425 aircraft during a flight testing the aircraft's maintenance system. National Union alleges in its complaint that ACP is liable either in strict liability or negligence for selling defective autofeather pressure switches which caused the airplane to crash. Comp. ¶¶ 112–121. It is undisputed that the accident occurred in Idaho.

ACP argues that because it did not create the defect which caused the tortious act in Idaho, it is not amenable to suit in Idaho. As support for this contention, ACP asserts that the National Transportation Safety Board's ("NTSB") Report on the subject accident concluded that the switches, allegedly manufactured by ACP, on the failed left engine were materially tampered with and illegally altered. NTSB Report, attached as Ex. A to Helvic's Aff. in support of Motion for Stay. What the NTSB Report said, however, does not prove that ACP is not negligent. Reviewing ACP's examination of the switches, the report noted there was evidence of what ACP characterized as "tampering and unapproved field adjustments to higher settings." *Id.* at 1f.

▮▮▮ ACP's evidence may show that ACP is not liable for the accident down the road. Whether the conduct is actually tortious, however, is not relevant to jurisdictional analysis under Idaho's long-arm statute. *St. Alphonsus*, 852 P.2d at 495.

Because the NTSB Report does not directly contradict National Union's allegations, we adopt National Union's version of facts for purposes of this motion. *Dole Food*, 303 F.3d at 1108. Construing these allegations in a light most favorable to National Union, and given the remedial nature of Section 5–514, *St. Alphonsus*, 852 P.2d at 495, we find that National Union has met its burden of showing a prima facie case of jurisdiction under Idaho's long arm statute. We now turn to whether jurisdiction is proper under the due process clause.

**B.  Due Process**

▮▮▮▮ While this court is bound to follow the Idaho Supreme Court's interpretation of the state's long arm statute,

whether the exercise of jurisdiction comports with due process is a question of federal law. *Data Disc*, 557 F.2d at 1286–87 n. 3. Therefore, contrary to ACP's assertions, the Idaho Supreme Court's treatment of the issue is not controlling on this court. Under federal law, a court may have personal jurisdiction over a defendant in one of two ways: general or specific. *Reebok Int'l Ltd. v. McLaughlin*, 49 F.3d 1387, 1391 (9th Cir.1995).

## 1. General Jurisdiction

■ If the defendant's activities and contacts with the forum state are substantial, continuous, or systematic, a court will have general jurisdiction over the defendant. *Id.* There are no facts before us to sustain a finding of general jurisdiction. Because, as explained more fully below, we grant National Union's request to stay our decision on jurisdiction until it has had the opportunity to conduct discovery of jurisdictional facts, we reserve consideration of whether National Union can establish facts to support of finding of general jurisdiction over ACP.

## 2. Specific Jurisdiction

■ Specific jurisdiction may be established if the defendant has such "minimum contacts" with the forum state such that he can reasonably anticipate being haled into court there. *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). A forum state's exercise of jurisdiction must not offend traditional notions of fair play and substantial justice. *Reebok*, 49 F.3d at 1391 (citations and internal quotation marks omitted). Specific jurisdiction is established by an analysis of the "quality and nature of the defendant's contacts with the forum state in relation to the cause of action." *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir.1987) (*citing Data Disc*, 557 F.2d at 1287).

■ The Ninth Circuit uses a three part test to determine if personal jurisdiction exists: (1) the defendant must perform some act or consummate some transaction within the forum or otherwise purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must arise out of or result from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *Bancroft & Masters, Inc. v. Augusta National Inc.*, 223 F.3d 1082, 1086 (9th Cir.2000) (citations omitted).

■ Although the Ninth Circuit formerly required a plaintiff to demonstrate each of the three elements to establish specific jurisdiction, its current approach is not quite so rigid. In a somewhat more flexible fashion, jurisdiction may be established through a lesser showing of minimum contacts, if considerations of reasonableness so require. *Ochoa v. J.B. Martin and Sons Farms, Inc.*, 287 F.3d 1182, 1189 n. 2 (9th Cir.2002).

### a. Purposeful Availment.

To prove the first element of this test, there must be a showing that ACP purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its law. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). In products liability cases, what constitutes purposeful availment has been shaped by two United States Supreme Court decisions, *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) and *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

In *World–Wide Volkswagen*, the Court held that a defendant corporation "purposefully avails" itself of a forum where the defendant places its products into in-

terstate commerce and reasonably foresees that those products will be delivered into the forum. *World–Wide Volkswagen*, 444 U.S. at 287, 100 S.Ct. 559. This seemingly broad articulation of the "stream of commerce" standard is not without its limits, however. The Court stated that "foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause," *id.* at 295, 100 S.Ct. 559, because foreseeability, taken to its logical extremes, would permit every seller of a product to be amenable to suit where ever the product traveled. *Abraham v. Agusta S.P.A.*, 968 F.Supp. 1403 (D.Nev.1997).

■ The "foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum state. Instead, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. 559. Therefore, based on the tenets of *World–Wide Volkswagen*, in products liability cases, there must be a showing of affirmative conduct by an out-of-state defendant directed at the forum state in order to find purposeful availment on behalf of that defendant. *See id.* at 297–98, 100 S.Ct. 559.

Following *World–Wide Volkswagen*, the Supreme Court attempted to clarify the definition of the "stream of commerce" theory in *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). This attempt failed, however, in that a majority of the Justices could not form a consensus on what that definition should be. Although all the Justices agreed that the case should be decided on the grounds that subjecting a foreign defendant to jurisdiction in California would violate the "traditional notions of fair play and substantial justice" prong of *International Shoe Co. v.*

*Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), a splintered plurality emerged on the "stream of commerce" theory.

Justice O'Connor, joined by three other Justices, and writing for the Court, rejected the broad "stream of commerce" theory based on foreseeability, concluding that merely placing a product into the stream of commerce with knowledge that it may be swept into a particular forum, without more, is insufficient to find purposeful availment. Rather, the plaintiff must provide an additional showing of some affirmative act by the defendant purposefully directed at the forum state to satisfy this prong of the minimum contacts test. *Id.* at 112, 107 S.Ct. 1026 (O'Connor, J.).

Justice O'Connor gave the following examples of what conduct would indicate purposeful direction to the forum state: (1) designing of the product for the forum state market, (2) advertising in the forum state; (3) establishing channels for providing regular advice to customers in the forum state; or (4) marketing the product through a distributor who had agreed to serve as the sales agent in the forum state. *Id.*

Justice Brennan, also joined by three Justices, concluded that the "stream of commerce" standard in products liability cases should be read as allowing jurisdiction over any manufacturer or retailer that places its goods in the stream of commerce with the knowledge that those goods will reach the forum state, considering the economic benefit received from sales in the forum. *Id.* at 116–17, (Brennan, J., concurring). Justice Stevens, the swing vote, joined with Justice O'Connor's opinion on the ground that the exercise of jurisdiction would offend notions of fair play and substantial justice; but wrote separately on the minimum contacts issue, explicitly re-

jecting the theories advanced by both Justice O'Connor and Justice Brennan.

As *Asahi* provides no definite answer as to which standard should be applied, the circuits have split over whether to follow Justice O'Connor or Justice Brennan's articulation of the "stream of commerce" theory. *Compare Boit v. Gar–Tec Products, Inc.*, 967 F.2d 671, 683 (1st Cir.1992)(adopting Justice O'Connor's test); *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945–46 (4th Cir. 1994)(same); *with Clune v. Alimak AB*, 233 F.3d 538, 542 (8th Cir.2000)(adopting Justice Brennan's test); *Ruston Gas Turbines Inc. v. Donaldson Company*, 9 F.3d 415, 420 (5th Cir.1993)(same); *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 947 (7th Cir.1992)(same). At least one court has resolved the issue by attempting to apply both standards. *Pennzoil Products Co. v. Colelli & Associates, Inc.*, 149 F.3d 197, 207 n. 11 (3d Cir.1998)(applying both *Asahi* tests and finding satisfaction of Justice O'Connor's more stringent test would result in satisfaction of Justice Brennan's test, obviating the need to choose between them). Still others, like the Ninth Circuit, have avoided the choice altogether, and instead have decided the issue based on the facts of the case at bar. *See Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir.1990), *rev'd on other grounds*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991)(because the defendant engaged in three of the four types of conduct articulated by Justice O'Connor, the court found it unnecessary to choose between the "stream of commerce" theories advanced by Justice O'Connor and Justice Brennan); *see also Tobin v. Astra Pharmaceutical Products, Inc.*, 993 F.2d 528, 543 (6th Cir. 1993).

Although the Ninth Circuit has not specifically adopted either view, case law indicates that some sort of affirmative conduct is required on behalf of the defendant in order for purposeful availment to be found. *See Doe v. American Nat'l Red Cross*, 112 F.3d 1048 (9th Cir.1997); *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267 (9th Cir.1995); *Abraham v. Agusta, S.P.A.*, 968 F.Supp. 1403 (D.Nev.1997). In *Doe*, for example, the court stated that "purposeful availment requires that the defendant engage in some form of affirmative conduct allowing or promoting the transaction of business within the forum state." 112 F.3d at 1051.

■■■ With these concepts in mind, we turn our attention to the facts before us. ACP asserts that it has not directed any conduct towards the forum state because it has not done business in Idaho; has no assets, property, employees, or business establishments in Idaho; directs no advertising into Idaho; and is not registered to do business in Idaho. Stout Aff. ¶¶ 7–9, in support of ACP's Brief Challenging Personal Jurisdiction.

In addition, ACP admits that it exclusively sells and distributes its autofeather pressure switches to the Cessna Aircraft Corporation. *Id.* at ¶ 4. It asserts that, without its knowledge or expectation, one of its products reached Idaho and was involved in the accident here. It also asserts, without any factual support, that the sale of its switches to anyone in Idaho is virtually non-existent. Reply (# 37) at 7.

National Union argues that because ACP sells and distributes its switches to Cessna, which markets its aircrafts nationally, and specifically in Idaho, that ACP did know and expect that its products could end up in Idaho. If permitted to conduct discovery and present evidence that ACP knew that Cessna marketed and distributed its products nationally, National Union asserts that this evidence would be enough to show purposeful availment. National Union has moved the court for a stay of our decision for time to conduct

discovery to gather this evidence. ACP did not oppose National Union's request for stay.

Courts have a significant amount of discretion to decide whether parties may conduct discovery relating to jurisdictional issues while a motion to dismiss is pending. *Data Disc,* 557 F.2d at 1285; *Orchid Biosciences, Inc. v. St. Louis University,* 198 F.R.D. 670 (S.D.Cal.2001). Although some courts require that a plaintiff make a prima facie showing of jurisdiction prior to a court allowing a party to conduct discovery, it appears the Ninth Circuit does not. *Orchid Biosciences,* 198 F.R.D. at 673. The court may limit discovery to matters relevant to the court's jurisdiction. *Id.*

We find that under the principles announced in *World–Wide Volkswagen* and *Asahi,* evidence that ACP marketed and sold its switches exclusively to, Cessna, which it knew to distribute its aircrafts nationally, and specifically in Idaho, would satisfy the purposeful availment prong. *Asahi,* 480 U.S. at 112, 107 S.Ct. 1026 (O'Connor, J); *Doe,* 112 F.3d at 1051. Therefore, we grant National Union's request for a stay of our decision while the parties conduct discovery solely on issues related to personal jurisdiction.

### b. Arising Out Of Activities

The second prong of the specific jurisdiction test requires that the claim arise out of or result from the defendant's forum-related activities. *Dole Food,* 303 F.3d at 1111. Here, there is no dispute but that the claim for damage from the accident arises out of ACP's allegedly defectively made product.

### c. Reasonableness

The last specific jurisdiction requirement is that the exercise of jurisdiction be reasonable. ACP cites to factors of an Idaho Supreme Court case, *Duignan v.*

*A.H. Robins Co.,* 98 Idaho 134, 559 P.2d 750 (1977), to dispute that the exercise of jurisdiction is reasonable. ACP argues that jurisdiction is not reasonable because ACP is a small business located in Iowa and because the plaintiff is financially independent.

Since the question of whether the exercise of jurisdiction comports with due process is a question of federal law, *Data Disc,* 557 F.2d at 1286–87 n. 3, we look to Ninth Circuit case law for guidance. The Ninth Circuit considers seven factors to determine whether the exercise of jurisdiction is reasonable: (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Dole Food,* 303 F.3d at 1114.

Unless a defendant makes a compelling argument to the contrary, however, jurisdiction is presumed reasonable upon a showing of purposeful availment. *Ochoa,* 287 F.3d at 1192. Therefore, we reserve consideration of this issue until briefing is completed so that we may determine whether National Union can establish the purposeful availment prong.

*IT IS, THEREFORE, HEREBY ORDERED THAT* defendant ACP's motion for a more definite statement (# 8) is **DENIED**.

*IT IS, THEREFORE, FURTHER, HEREBY ORDERED THAT* plaintiff National Union's motion for stay of our decision on ACP's motion to dismiss (# 10) is **GRANTED**. The parties shall have

ninety (90) from the date of entry of this order, within which to conduct discovery on the issue of personal jurisdiction. The applicable Federal Rules of Civil Procedure and the Local Rules of the District of Idaho will govern the procedures for serving and responding to interrogatories and requests for production, along with the noticing of any depositions. Commencing as of the completion of the additional discovery period ordered, the parties shall have twenty (20) days within which to file contemporaneous points and authorities addressing any information adduced in the additional discovery and its relation to the issue of personal jurisdiction. The parties shall thereafter have fifteen (15) days within which to respond to the opposing party's points and authorities. The motion to dismiss shall then be resubmitted to the Court together with the supplementary points and authorities and responses.