Robin P. PETERSEN, Plaintiff,

v.

BOEING COMPANY, et al., Defendants.

No. CV–10–00999–PHX–ROS.

United States District Court, D. Arizona.

Signed June 10, 2015.

**727**

Richard H. Friedman, Friedman Rubin, Bremerton, WA, for Plaintiff.

Anna Humphreys Finn, Colin F. Campbell, Geoffrey Mt Sturr, Kathleen E. Brody, Osborn Maledon Pa, Phoenix, AZ, for Defendants.

## ORDER

ROSLYN O. SILVER, Senior District Judge.

This case involves a dispute between a former employee and the companies to which he applied to work as a flight instructor in Saudi Arabia in 2008. Since the case's inception, the complaint has been through several iterations.

On February 18, 2015, the Court resolved a motion to dismiss and allowed two counts to proceed: one for fraud and misrepresentation and one for false imprisonment. On March 11, 2015, Plaintiff filed a motion for partial summary judgment, arguing a forum selection clause contained in his employment documents was invalid and unenforceable. The Court denied the motion, concluding material facts remained in dispute. On April 8, 2015, the Court held an evidentiary hearing to ascertain those facts bearing on the validity and enforceability of the forum selection clause. Based on the evidence presented, the Court finds the forum selection clause is unenforceable.[1]

## EVIDENCE PRESENTED

In November 2008, Plaintiff Robin Petersen ("Plaintiff") applied to Defendant Boeing Company through a website for a job to train pilots in Saudi Arabia with

Anita Rosenthal, Steven C. Dawson, Dawson & Rosenthal PC, Sedona, AZ,

1. As explained below, the decision is based on facts found relating to the Saudi Arabian legal system as a forum for this dispute. The Court's ruling is based on undisputed testimony of both expert witnesses. As such, the decision does not require the Court to make credibility findings among competing witness testimony. In addition, the Court has refrained from ruling on the question of whether the forum selection clause was obtained by fraud because of the close relationship the question bears to the dispositive issues.

Defendant Boeing International Support Systems Company Saudi Arabia Ltd. ("BISS") (collectively, "Defendants"). On November 17, 2008, Plaintiff had a telephonic interview with a Boeing employee, Dan Nelson. On November 19, 2008, Plaintiff received an email from a Boeing employee, Karen Jones, offering him a position. The email contained eleven attachments totaling thirty-six pages, which Plaintiff testified he printed and read. Upon printing the documents, Plaintiff said he noticed there was duplication. Instead of attaching his Employment Agreement ("Agreement"), as stated in the email, Ms. Jones attached two copies of Plaintiff's Offer Letter.[2] Defendants admit the Employment Agreement was not attached to the email, though the message indicated otherwise. Ms. Jones testified the omission was an oversight, which was not disputed.

Noticing the error, Plaintiff testified he called Ms. Jones. As support, Plaintiff produced phone records showing two calls to Ms. Jones from Plaintiff's cell phone at 1:00 pm and 1:14 pm on November 20, 2008. Each call lasted two minutes. Plaintiff also stated that, on November 19, 2008, the date he received Ms. Jones's email, he was staying at his father's home and it was possible he called Ms. Jones on the 19th from his father's home. But, he could not recall and did not have phone records to verify his supposition.

Plaintiff testified that, during the calls to Ms. Jones, he explained the duplication and missing Employment Agreement and was told that if he wanted the job, he needed to sign and return the Offer Letter and Acknowledgment. Plaintiff also claimed Ms. Jones told him not to worry about the missing Employment Agreement because it would be presented to him for signature upon his arrival in Saudi Arabia.

Ms. Jones did not recall receiving the phone calls from Plaintiff and testified that, if a missing document had been brought to her attention, she would have immediately sent it on to Plaintiff.

Documents attached to the email were the Offer Letter and Addendum A to Employment Agreement. The Offer Letter stated Plaintiff had until November 21, 2008 to respond "[i]n order to allow you sufficient time to make this important decision." Plaintiff's Exhibit 17. Addendum A contained a forum selection clause, which stated: "The Labor Courts of Saudi Arabia shall have sole jurisdiction over any disputes arising out of this agreement." Plaintiff's Exhibit 17. Although Plaintiff testified he printed and read all of the attached documents, he later admitted he had not read the Addendum "clearly" because, he claimed, Ms. Jones told him it was not important.

On November 20, 2008, Plaintiff faxed Ms. Jones a copy of the signed Offer Letter and Acknowledgement, which stated he had been provided with a copy of the Employment Agreement and Addendums. Defendants' Exhibit 102. On the fax cover sheet, Plaintiff stated he would complete any additional paperwork and requirements "by this afternoon." Defendants' Exhibit 102.

In January 2009, Plaintiff traveled to Riyadh, Saudi Arabia. There, he met with Boeing employee Shaun Ford, who presented him, for the first time, with a copy of the Employment Agreement. Plaintiff characterized Mr. Ford as tense and that he rushed Plaintiff to sign the Employment Agreement. The Employment Agreement contained a forum selection clause similar to the one contained in Addendum A. That clause stated Saudi law

---

2. Contrary to his testimony, Plaintiff stated in his initial complaint that he received and signed the Employment Agreement while in the U.S., but was told not to read it. (Doc. 1).

would govern the Agreement and that "[a]ny discrepancies that may arise in connection with the interpretation and performance of [the] Agreement shall be submitted to the Ministry of Labor or the local Saudi Arabian labor courts, as appropriate." (Doc. 93–1 at 61).

Mr. Ford testified that he spent three to four hours with Plaintiff that included specifically discussing the documents with him. Plaintiff said only approximately one hour of the meeting was devoted to discussing the documents. Plaintiff testified, after he signed the Agreement, Mr. Ford seemed to relax. Plaintiff acknowledged it was too late for him to turn down his employment with Boeing at that point because he could not have survived without the anticipated compensation for his work.

Regarding access to the Saudi Labor Courts, Plaintiff's expert, Haider Hamoudi, an associate professor of law at the University of Pittsburgh School of Law, and Defendants' expert, Omar Al–Saab, a Saudi lawyer, both agreed that non-Saudis traveling to Saudi Arabia must do so under either a work or business visa or for purposes of religious pilgrimage. The experts also agreed Saudi courts do not ordinarily allow or have the capability of hearing testimony via telephone conference or video feed.

Defendants' expert testified that the Saudi Labor Courts have jurisdiction over employment contract disputes and, where ambiguous, conflicting interpretations are generally resolved in favor of employees. Significantly, when a dispute is not based on a term or representation memorialized in an employment contract, he stated, testimony is only occasionally considered. But it is common that the dispute is resolved based on the written evidence of the contract. Finally, and of greatest signifi-

cance, he testified Saudi courts will only credit an individual's testimony if it is corroborated by two adult, male, Muslim witnesses.

The expert made clear a dispute involving a party claiming he had been forced to sign an employment contract would likely not be heard before the Saudi Labor Court, but rather would be transferred to the general, criminal court.

## ANALYSIS

### I. Legal Standard

■ A party arguing the unenforceability of a forum selection clause bears a "heavy burden": Such a clause "[should be] enforce[d] ... unless [the party contesting it can] clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).[3] Despite remanding for a finding on whether enforcing a forum selection clause "[would] be so gravely difficult and inconvenient that [the party would] for all practical purposes be deprived of his day in court," the *Bremen* Court held: "[W]here it can be said with reasonable assurance that at the time they entered the contract, the parties to a freely negotiated private international commercial agreement contemplated the claimed inconvenience, it is difficult to see why any such claim of inconvenience should be heard to render the forum clause unenforceable." *Id.* at 1916–17.

In *Atlantic Marine*, decided approximately seven months after the Ninth Circuit's decision in this case, the Supreme Court upheld *Bremen's* presumption in fa-

---

**3.** *Bremen* involved a dispute between an American corporation and a German corporation over the enforcement of a forum selection clause which named the London Courts of Justice as the proper forum for disputes.

vor of enforcing privately contracted forum selection clauses. The Court held, if the forum selection clause is valid, "[the] court should ordinarily transfer the case to the forum specified in that clause. [And] [o]nly under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) [or *forum non conveniens*] motion [based on that clause] be denied." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, ―― U.S. ――, 134 S.Ct. 568, 581–582, 187 L.Ed.2d 487 (2013).[4] Resolving lingering confusion about the proper manner of enforcing a forum selection clause pointing to a nonfederal forum, the Court held such enforcement should be sought and evaluated under the doctrine of *forum non conveniens*. *Atl. Marine*, 134 S.Ct. at 580.[5]

▇▇▇▇ The first step in applying *forum non conveniens* is to determine whether the forum specified in the clause is adequate. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).[6] If the forum is adequate, a typical application of *forum non conveniens* requires the court to weigh both the private and public interest factors affected in the choice of forum. But, echoing *Bremen*, the *Atlantic Marine* Court held "parties [who voluntarily] agree to a forum-selection clause, [ ] waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine*, 134 S.Ct. at 582. Therefore, where the parties have validly agreed to litigate in a particular forum and one party moves to dismiss based on that agreement, courts should apply *forum non conveniens* but should only consider "public-interest factors" which "will rarely defeat a transfer motion." *Id.* at 574.[7]

Lower courts have taken various approaches when applying *Bremen* and *Atlantic Marine*. *See Jes Solar Co. v. Matinee Energy, Inc.*, 2014 WL 2885476, at *2 (D.Ariz. June 25, 2014) (declining to consider private interests where forum selection clause deemed valid, and proceeding to *forum non conveniens* analysis under *Atlantic Marine*); *Frango Grille USA, Inc. v. Pepe's Franchising, Ltd.*, 2014 WL 7892164, at *2–3 (C.D.Cal. July 21, 2014) (undertaking *Bremen* analysis to determine validity before turning to Atlantic Marine to analyze forum non conveniens); *Mao v. Sanum Invs., Ltd.*, 2014 WL 5292982 at *3–4 (D.Nev. Oct. 15, 2014) (same); *Russel v. De Los Suenos*, 2014 WL 1028882, at *6 (S.D.Cal. Mar. 17, 2014)

**4.** *Atlantic Marine* involved a dispute between a Virginia corporation and a Texas corporation over the enforcement of a forum selection clause which named Virginia as the proper forum for disputes.

**5.** The Court held Rule 12(b)(3) was not a proper mechanism for enforcing a forum selection clause because such clauses do not render venue improper. *Id.* Although the Court did not definitively state whether parties may use Rule 12(b)(6) to enforce forum selection clauses, it hinted that a 12(b)(6) motion was not the preferred method. *See id.* at n. 4.

**6.** *Atlantic Marine* did not specifically address this aspect of the *forum non conveniens* analysis.

**7.** "Public interest factors" include, but are not limited to: "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Id.* at 581, n. 6 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)).

(first applying *Atlantic Marine* and then loosely applying *Bremen*).

In essence, in its order on Plaintiff's motion for summary judgment, the Court held, under *Atlantic Marine,* a motion to dismiss or transfer pursuant to a valid forum selection clause is evaluated according to the doctrine of *forum non conveniens,* excluding that doctrine's traditional consideration of private interest factors, but incorporating *Bremen's* concerns about access to justice in weighing the public interest factors. (*See* Doc. 177). This requires assessing the adequacy and availability of the proposed alternative forum, followed by balancing the public interest factors for and against granting dismissal for pursuit in the alternative forum.

## II. Saudi Arabia is Not an Adequate Forum

The forum selection clause specifies the Saudi Labor Courts, specifically, shall have sole jurisdiction over claims arising out of the Employment Agreement. Therefore, the Court's analysis centers on the adequacy of the Saudi Labor Courts, specifically, as opposed to Saudi courts more generally.

■■■ An alternative forum is *adequate* if it is capable of "provid[ing] the plaintiff with a sufficient remedy for his wrong." *Dole Food Co. v. Watts,* 303 F.3d 1104, 1118 (9th Cir.2002). Dismissal is not appropriate where "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft,* 454 U.S. at 254, n. 22, 102 S.Ct. 252. However, an alternative forum is not inadequate merely because the substantive law to be applied is less favorable than that of the present forum. *Id.* at 247, 102 S.Ct. 252. The forum need only provide "some potential avenue for redress." *Ceramic Corp. of*

*Am. v. Inka Mar. Corp. Inc.,* 1 F.3d 947, 949 (9th Cir.1993). In determining the adequacy of the alternative forum, the Court may consider whether the litigants would be barred from relief due to discrimination, corruption, or some other unfairness. *See Carijano v. Occidental Petroleum Corp.,* 643 F.3d 1216, 1226 (9th Cir.2011).[8] General or anecdotal allegations of corruption or the like are insufficient. *Id.* at 1226–27. Instead, such allegations must be particularized.

■■■ An alternative forum is *available* "when defendants are amenable to service of process in the foreign forum and when the entire case and all parties can come within the jurisdiction of that forum." *Gutierrez v. Advanced Med. Optics, Inc.,* 640 F.3d 1025, 1029 (9th Cir.2011) (citing *Dole Food,* 303 F.3d at 1118) (internal quotation marks omitted).[9]

■■■ The Saudi Labor Courts are not an adequate forum for Plaintiff's claims. Both experts testified that the Saudi Labor Courts (and other Saudi courts) employ discriminatory evidentiary rules. A Saudi court will only credit testimony if corroborated by two male, Muslim witnesses. This discrimination has direct bearing on Plaintiff's case since his claims are largely based on events not memorialized in writing or otherwise recorded. As a result, the case turns on a combination of testimony and circumstantial evidence. Furthermore, it is undisputed Plaintiff lacks male Muslin witnesses to support his claims. Perhaps Plaintiff could appear in Saudi Labor Court and present his individual testimony, but he would do so without corroboration. Thus, it would be meaningless.

This finding does not render every non Anglo–American forum inadequate, as De-

---

8. This consideration is similar to the *Bremen* public policy factor.

9. This is precisely the *Bremen* requirement that the Plaintiff receive his day in court.

fendants claim. The Saudi law is not merely a "procedural difference[ ]" but one that offends the notion of equality before the law on which the American system of justice is premised. This is not a matter of less favorable law or a less beneficial remedy, but one of blatantly discriminatory law which essentially forecloses the relief Plaintiff seeks. Nor does the conclusion render the Saudi Labor Courts inadequate for every dispute. Not every claim in Saudi courts rests on testimonial evidence or lacks male, Muslim witnesses from whom to procure such evidence. But because the circumstances here foreclose any fair avenue of relief for Plaintiff in the Saudi Labor Court, it is an inadequate forum for the current dispute. *Cf. Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F.Supp.2d 289, 336 (S.D.N.Y.2003) (holding Sudan inadequate forum based in part on "greatly reduced rights" of plaintiffs under *Shari'a* law and "total lack of legal personality" and "diminished testimonial competence" for non-Muslim witnesses); *UNC Lear Servs., Inc. v. Kingdom of Saudi Arabia*, No. SA–04–CA–1008–WRF, 2008 WL 2946059, at *17 (W.D.Tex. July 25, 2008) *aff'd in part, rev'd in part and remanded*, 581 F.3d 210 (5th Cir.2009) (noting discrimination against non-Muslims in Saudi Arabian courts "creates a genuine question as to whether all parties—non-Muslims—will be 'treated fairly,'" but declining to rule on those grounds and proceeding to weigh public and private interest factors under *forum non conveniens* ).

Defendants' support for their position is unpersuasive. For example, Defendants

state the court in *Spradlin v. Lear Siegler Mgmt. Servs. Co.*, enforced a forum selection clause pointing to Saudi Arabia "even though Saudi Arabia has a significantly different judicial system." (Doc. 187 at 10) (citing *Spradlin v. Lear Siegler Mgmt. Servs. Co.*, 926 F.2d 865, 869 (9th Cir. 1991)). But, in reaching its decision, the *Spradlin* court did not consider or discuss the characteristics of the Saudi court. As the Ninth Circuit stated in its decision in this case, *Spradlin's* dismissal was based on "plaintiff's failure 'to come forward ... with *anything* beyond the most general and conclusory allegations of fraud and inconvenience' [regarding the forum selection clause]," not an evaluation of the adequacy of the alternative forum. *Petersen v. Boeing Co.*, 715 F.3d 276, 280 (9th Cir. 2013) (citing *Spradlin*, 926 F.2d at 868). In *Forsythe v. Saudi Arabian Airlines Corp.*, another out of circuit case cited by Defendants, the court was not provided with evidence "that a Saudi Arabian forum would treat [the plaintiff] unfairly or deprive him of all remedies." 885 F.2d 285, 290 (5th Cir.1989). By contrast, here there is direct, undisputed evidence Plaintiff would be treated unfairly in the Saudi forum.[10]

In addition, it is rather unclear whether the Saudi Labor Courts are available or have jurisdiction to handle Plaintiff's claims. Although Plaintiff is suing an employer over events that took place during his period of employment and on the employer's property, the events involve what Defendant's expert indicated would likely be considered criminal conduct (e.g. coercion, false imprisonment), in which case he stated the claims would be transferred out

---

10. Defendants' other proffered support is similarly flawed. *See Tisdale v. Shell Oil Co.*, 723 F.Supp. 653, 659 (M.D.Ala.1987) (holding no evidence was provided showing Saudi law was inadequate to address plaintiff's claims or Saudi forum would not fairly resolve claims); *Shields v. Mi Ryung Const. Co.*, 508

F.Supp. 891, 897 (S.D.N.Y.1981) (enforcing forum selection clause pointing to Saudi Arabia based on availability of travel visa, Saudi counsel, and court with jurisdiction over claims, but not discussing evidentiary rules or their effect on the case).

of the labor courts to the general criminal court, a forum in which the parties had not previously agreed to litigate. *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1119 (9th Cir.2002) ("[T]he applicability of the purported 'forum selection' clause to this action is uncertain, to say the least, because Dole does not challenge the terms of the Service Agreement, but rather alleges fraud and breach of fiduciary duty.").

Based on the foregoing, the Court concludes the forum selection clause cannot be enforced. As a result, the case will not be dismissed, and the parties will proceed to discovery and resolution of the controversy in this Court.

Accordingly,

**IT IS ORDERED** the forum selection clause in Plaintiff's employment documents is unenforceable.

**IT IS FURTHER ORDERED** a scheduling order pursuant to Fed.R.Civ.P. (FRCP) 16 will issue separately.