**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| BURRI LAW PA, a Florida professional association; DEAN ALLEN BURRI, a Florida resident, *Plaintiffs-Appellants*,<br><br>v.<br><br>WILLIAM C. SKURLA, an individual; KURT RICHARD BURNETT, an individual; MILAN LACH, an individual; METROPOLITAN ARCHDIOCESE OF PITTSBURGH, BYZANTINE RITE, a Pennsylvania non-profit corporation; BYZANTINE CATHOLIC DIOCESE OF PARMA, an Ohio non-profit corporation; EPARCHY OF PASSAIC, a New Jersey non-profit corporation; UNKNOWN PARTIES, named as: ABC Entities 1–10 and John and Jane Does 1–10, *Defendants-Appellees.* | No. 21-15271<br><br>D.C. No. 2:20-cv-01692-DLR<br><br>OPINION |

Appeal from the United States District Court
for the District of Arizona
Douglas L. Rayes, District Judge, Presiding

Argued and Submitted December 7, 2021
Pasadena, California

Filed June 3, 2022

Before: Marsha S. Berzon, Carlos T. Bea, and
Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Berzon

### SUMMARY[*]

### Personal Jurisdiction

The panel vacated the district court's dismissal for lack of personal jurisdiction of Dean Burri's action against three bishops of the Byzantine Catholic Church and their respective dioceses.

Burri alleged that defendants directed defamatory statements about him toward individuals and entities in Arizona and tortiously interfered with his contractual relationship with the Byzantine Catholic Eparchy of Phoenix.

The panel held that the district court erred in dismissing for lack of personal jurisdiction over the defendants. Where a defendant directs communications that are defamatory toward a forum state and seeks to interfere with a forum state contract, the defendant has purposefully directed conduct at the forum state, and the defendant knows or should know that such conduct is likely to cause harm in the forum state.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel rejected defendants' contention that the ecclesiastical abstention doctrine deprived the court of subject matter jurisdiction over the appeal. The panel held that the doctrine was not relevant here where Burri was not asking the court to adjudicate the sort of issues covered by the ecclesiastical abstention doctrine.

The panel applied the *Calder* effects test to determine whether a defendant purposefully directed activities toward a forum state. *Calder v. Jones*, 465 U.S. 783, 788-89 (1984). The panel held that Burri's claims against defendant William Skurla, the Archbishop of Pittsburgh, were on all fours with *Calder*. The panel held that the district court erred in holding that Skurla did not purposefully direct conduct at Arizona. Taking Burri's factual allegations as true, the panel held that Skurla directed communications toward Arizona that were defamatory and were designed to interfere with an Arizona lawsuit and an Arizona contract. Such acts targeted the forum state itself and such acts were likely to cause harm in Arizona. The panel held that the district court erred in concluding that Burri, as a Florida resident, could not suffer harm in Arizona where Skurla's statements circulating in Arizona would cause Burri reputational harm in Arizona, and the communications were designed to undermine Burri's employment contract with the Phoenix Eparchy. Burri carried his burden to establish a prima facie case that Skurla "purposefully directed" conduct at Arizona. The district court did not address the other two components of the due process "minimum contacts" inquiry. The panel vacated the dismissal of Burri's claims against Skurla – and by extension the Eparchy of Pittsburgh – and remanded for the district court to complete the remainder of the jurisdictional inquiry.

The panel's analysis regarding Burri's claims against Richard Burnett, the Bishop of Passaic, Milan Lach, the

Bishop of Parma, and their respective dioceses was similar, with one caveat. The First Amended Complaint contained substantially less detail regarding the actions of Burnett and Lach. The district court did not address that important difference. In addition, the district court's denial of Burri's motion for jurisdictional discovery rested on the same misunderstanding that undermined its analysis regarding personal jurisdiction over Skurda – that Burri, as a Florida resident, could not suffer harm in Arizona. The panel vacated the dismissal of Burri's claims against Burnett, Lach and the Eparchies of Passaic and Parma; vacated the denial of Burri's motion for jurisdictional discovery; and remanded so that the district court could assess the questions afresh.

## COUNSEL

Jamie L. Mayrose (argued) and Deanna R. Rader, Rader Mayrose LLP, Phoenix, Arizona, for Plaintiffs-Appellants.

Stacy K. Luell (argued) and Jeffrey T. Nichols, Crivello Carlson S.C., Milwaukee, Wisconsin, for Defendants-Appellees William C. Skurla, Kurt Richard Burnett, Metropolitan Archdiocese of Pittsburgh Byzantine Rite; and Eparchy of Passaic.

James B. Niehaus (argued) and Klevis Bakiaj, Frantz Ward LLP, Cleveland, Ohio, for Defendants-Appellees Milan Lach and Byzantine Catholic Diocese of Parma.

**OPINION**

BERZON, Circuit Judge:

Dean Burri brought suit in Arizona against three bishops of the Byzantine Catholic Church—William Skurla, the Archbishop of Pittsburgh; Richard Burnett, the Bishop of Passaic; and Milan Lach, the Bishop of Parma—and their respective dioceses. He alleges that the Defendants directed defamatory statements about him toward individuals and entities in Arizona and tortiously interfered with his contractual relationship with the Byzantine Catholic Eparchy of Phoenix (the "Phoenix Eparchy").

The district court granted the Defendants' motions to dismiss for lack of personal jurisdiction and denied Burri's motion for jurisdictional discovery. The court concluded that Defendants did not purposefully direct conduct at Arizona and that no set of facts could establish that Burri was likely to suffer harm in Arizona. We disagree. Where a defendant directs communications that are defamatory toward a forum state and seeks to interfere with a forum state contract, the defendant has purposefully directed conduct at the forum state, and the defendant knows or should know that such conduct is likely to cause harm in the forum state. The dismissal for lack of personal jurisdiction therefore rested on a legal error.

## I.

### A. Factual Background

Burri, a Florida resident, owns Burri Law, P.A., a Florida law firm that specializes in assisting clients associated with the Catholic Church with employee benefits issues, including Employee Retirement Income Security Act

("ERISA") issues.[1]  In late 2015, the Phoenix Eparchy, an Arizona resident, hired Burri to investigate the Eparchy's health care benefits plan, draft health plan documents, and, if necessary, pursue litigation on its behalf.  Those tasks required Burri regularly to direct communications toward Arizona, meet with his clients in Arizona, and perform work in Arizona.

Pursuant to his contract with the Phoenix Eparchy, Burri began investigating the Eastern Catholics Benefits Plan (the "Plan"), an ERISA health care plan that provided benefits to the Phoenix Eparchy.  Burri requested original Plan formation documents and accounting information from Plan administrators, including Skurla, but was refused.  Burri nevertheless uncovered irregularities in the Plan that demonstrated it was not in compliance with applicable law. For example, Burri discovered that Plan administrators had illegally commingled Plan funds, converted Plan assets, and placed Plan funds in offshore accounts.  After learning about Burri's investigation, Plan administrators unlawfully sought to restructure the Plan by attempting to "merge" it "with other health plans from other employers, namely the Eparchies of Pittsburg, Passaic, and Parma," which are led by Skurla, Burnett, and Lach, respectively.

After concluding that further negotiation with the Plan administrators would not be fruitful, the Phoenix Eparchy, represented by Burri, filed an ERISA action against the Plan in the District of Arizona.  *See* Complaint, *Byzantine Cath. Eparchy of Phx. v. Emp. Benefit Servs., Inc.*, No. 2:18-cv-

---

[1] Because we are reviewing the district court's decision to grant the Defendants' motions to dismiss, "we recite the facts as alleged in [Burri's] complaint, and assume them to be true." *Brooks v. Clark County*, 828 F.3d 910, 914 n.1 (9th Cir. 2016).

01288-GMS (D. Ariz. Apr. 26, 2018) (the "ERISA action"). Two months later, the Phoenix Eparchy filed an amended complaint adding Skurla and other Plan administrators as defendants. In response, Skurla, Burnett, and Lach—all Defendants in this case—commenced a campaign of defamation against Burri. To conceal the Plan's ERISA violations, the Defendants sought to have Burri's contract with the Phoenix Eparchy terminated and the Bishop of Phoenix replaced before the ERISA action could move into the discovery phrase.

In particular, Skurla "repeatedly requested that the Phoenix Eparchy terminate the contract with" Burri. Skurla also stated, among other things, that Burri was "greedy, incompetent, and inexperienced" and sought to "make a name for himself" through a lawsuit that "had absolutely no legal merit." These statements were communicated to the Phoenix Eparchy and third parties through emails, phone calls, voicemails, letters, and in-person communications. Some of the recipients were in Arizona when they heard or read the statements.

Although Burri has the greatest knowledge regarding Skurla's actions, he maintains on information and belief that Burnett and Lach repeated Skurla's false and defamatory statements to the Phoenix Eparchy and third parties, and "directed" third parties "to urge the Phoenix Eparchy to fire [Burri] and terminate the Arizona lawsuit." And Skurla, Burnett, and Lach attended an in-person meeting in Texas that included "multiple representatives from the Phoenix Eparchy." At this meeting, "the false statements [about Burri] were repeated, and it was communicated to the

Phoenix Eparchy" that the ERISA action should be dropped and Burri should be fired.[2]

When these actions failed to produce the desired result, the Defendants communicated their displeasure with Burri to the Papal Nuncio. Relying on a precept of canon law under which church officials cannot sue one another without papal authorization, the Pope issued an order requiring the Phoenix Eparchy to withdraw the ERISA action and terminate its relationship with Burri. Burri also alleges that church officials caused a canon lawyer who was "of counsel" at Burri Law, P.A. to end his contractual relationship with Burri.

Following the termination of the ERISA action, Burri submitted a bill for his legal services. The Phoenix Eparchy, under new leadership, refused to pay. *See* Complaint, *Burri L., P.A. v. Byzantine Cath. Eparchy of Phx.*, No. 8:18-cv-02879-CEH-JSS (M.D. Fla. Nov. 26, 2018)*.* The Phoenix Eparchy subsequently filed a malpractice suit against Burri in Arizona state court, which Burri removed to the District of Arizona. *See* Notice of Removal, *Byzantine Cath. Eparchy of Phx. v. Burri L., P.A.*, No. 2:20-cv-779-PHX-ROS (D. Ariz. Apr. 22, 2020). Burri filed counterclaims in the Arizona malpractice suit to recover his unpaid legal fees. *See* Answer and Counterclaims, *Byzantine Cath. Eparchy of Phx. v. Burri L., P.A.*, No. 2:20-cv-779-PHX-ROS (D. Ariz. Oct. 30, 2020).

---

[2] Burri's complaint did not specify that the meeting occurred in-person in Texas, but the district court's decisions and the parties' briefing include those details.

## B. Procedural History

In July 2020, Burri filed this action in Arizona state court. His complaint pressed four claims: (1) tortious interference with contractual relations; (2) tortious interference with prospective contractual relationships; (3) unjust enrichment; and (4) defamation.[3] Skurla, Burnett, and Lach were named in their individual capacities, and their respective dioceses were named under a respondeat superior theory of liability.

After the Defendants removed the action to the District of Arizona, Lach and the Parma Eparchy (the "Lach Defendants") and Skurla, Burnett, and the Pittsburgh and Passaic Eparchies (the "Skurla Defendants") filed separate motions to dismiss for lack of personal jurisdiction. Then, after Burri filed a First Amended Complaint ("FAC"), the district court denied the Defendants' motions to dismiss as moot; the Lach Defendants and the Skurla Defendants again filed separate motions to dismiss; and Burri filed a motion for leave to conduct jurisdictional discovery. Burri's motion proposed the following discovery requests:

1. Produce all documents related to any travel to/from Arizona since 2016.

2. Produce all written communications between Defendants and the Eparchy of Phoenix, including texts, e-mails, and letters, since 2016 related to the subject of the lawsuit.

---

[3] This appeal focuses solely on Burri's claims for defamation and tortious interference with contractual relations.

3.  Produce all written communications between Defendants and co-Defendants, including texts, e-mails, and letters, since 2016, related to the subject of the lawsuit.

4.  Identify all persons related to the Eparchy of Phoenix and/or the Catholic Church with whom you discussed Dean Burri or Burri Law Group, or the instant lawsuit (excluding counsel).

Burri also requested leave to depose the Defendants.

A few months later, the district court dismissed the claims against the Skurla Defendants and denied Burri's motion for jurisdictional discovery against them. In another order, the court dismissed the claims against the Lach Defendants and denied the motion for discovery against them. The reasoning of the two orders was virtually identical—the court stated that it lacked personal jurisdiction over Burri's claims because the Defendants did not purposefully direct conduct toward Arizona sufficient to satisfy the due process "minimum contacts" inquiry, and no discovery could cure that problem. This appeal followed.

**II.**

The Defendants initially contend that the ecclesiastical abstention doctrine deprives us of subject matter jurisdiction over this appeal. The ecclesiastical abstention doctrine provides that a civil court may not adjudicate "the correctness of an interpretation of canonical text or some decision relating to government of the religious polity." *Paul v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, 819 F.2d 875, 878 n.1 (9th Cir. 1987).

The doctrine is not relevant here.  Burri is not asking us to adjudicate the sort of issues covered by the ecclesiastical abstention doctrine.  "Rather, [he] seeks relief for the harms [he] has suffered as a result of conduct engaged in by" the Defendants, regardless of whether the conduct was "consistent with the governing law of the Church."  *Id.*  The ecclesiastical abstention doctrine has no application to this case.

## III.

An exercise of personal jurisdiction in federal court must comport with both the applicable state's long-arm statute and the federal Due Process Clause.  *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404–05 (9th Cir. 1994).  Arizona's long-arm statute permits jurisdiction over non-resident defendants to the full extent allowable under the United States Constitution.  Ariz. R. Civ. P. 4.2(a); *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997).  Due process, in turn, requires that non-resident defendants have sufficient "minimum contacts" with the forum state such that exercising jurisdiction would not offend "traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

For cases sounding in tort, as here, a defendant has sufficient minimum contacts with the forum state to establish specific personal jurisdiction if: (1) the defendant purposefully directs activities toward the forum state, (2) the plaintiff's claim arises out of or relates to those activities, and (3) an exercise of jurisdiction would be reasonable. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002); *see also Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227–28 (9th Cir. 2011).  If the plaintiff establishes the first two components of this inquiry, the

burden shifts to the defendant to "present a compelling case that the exercise of jurisdiction would not be reasonable." *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 859 (9th Cir. 2022) (quoting *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068–69 (9th Cir. 2017)).[4]

The *Calder* effects test governs our inquiry into whether a defendant has purposefully directed activities toward a forum state. It establishes that if a defendant: (1) commits an intentional act, (2) expressly aimed at the forum state, that (3) causes harm the defendant knew was likely to be suffered in the forum state, then the defendant has purposefully directed conduct at the forum state. *Axiom Foods, Inc.*, 874 F.3d at 1069; *Dole Food Co.*, 303 F.3d at 1111; *Calder v. Jones*, 465 U.S. 783, 788–89 (1984). Jurisdiction may be constitutionally maintained in such a scenario even if the defendant never set foot in the forum state, if the defendant's contacts with the forum state are out-of-state acts that had an effect in the forum. *See Dole Food Co.*, 303 F.3d at 1111; *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004).

A district court's dismissal for lack of personal jurisdiction is reviewed de novo. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). The jurisdictional inquiry must decouple defendants, considering whether each individual defendant has had sufficient "minimum contacts" with the forum state to justify an exercise of jurisdiction over that defendant. *See, e.g.*, *Sher v. Johnson*, 911 F.2d 1357,

---

[4] Personal jurisdiction may be specific or general. *See Dole Food Co.*, 303 F.3d at 1111. Burri does not contend that the Defendants are subject to general personal jurisdiction in Arizona, so we do not address the analytical framework applicable to general personal jurisdiction cases.

1365–66 (9th Cir. 1990). Before discovery and in the absence of an evidentiary hearing, as here, the plaintiff need only make "a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (quoting *Doe v. Unocal*, 248 F.3d 915, 922 (9th Cir. 2001), *abrogated on other grounds by Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017)). In determining whether the plaintiff has met that burden, a court must accept as true all uncontroverted allegations in the plaintiff's complaint and must resolve all disputed facts in favor of the plaintiff. *Id.*

**A.**

The district court held that Skurla did not purposefully direct conduct at Arizona, both because his actions did not target the forum state itself and because he did not cause harm he knew was likely to be suffered in Arizona. In coming to that conclusion, the district court reasoned that Burri, as a Florida resident, could not suffer an injury in Arizona. The district court ended its jurisdictional inquiry there, without addressing the other two components of the due process "minimum contacts" test.

The district court's analysis was incorrect. Taking Burri's factual allegations as true, as we must, Skurla directed communications toward Arizona that were defamatory and were designed to interfere with an Arizona lawsuit and an Arizona contract. Precedent establishes both that such acts target the forum state itself and that such acts are likely to cause harm in Arizona. We therefore vacate the dismissal of Burri's claims against Skurla—and, by extension, the Eparchy of Pittsburgh—and remand for the district court to complete the remainder of the jurisdictional inquiry.

**i.**

As explained, the *Calder* effects test governs whether a defendant has purposefully directed conduct at the forum state. Here, the first prong of the test, whether the defendant committed an intentional act, is plainly satisfied. Skurla's alleged actions—communicating defamatory statements and interfering with a contractual relationship—would constitute intentional tortious acts. *See, e.g.*, *Calder*, 465 U.S. at 788–89; *Picot v. Weston*, 780 F.3d 1206, 1213–14 (9th Cir. 2015). Skurla does not argue otherwise.

**ii.**

With respect to the second prong of the *Calder* effects test, whether the defendant's acts targeted the forum state, the district court concluded that because Skurla's alleged acts "targeted [Burri's] professional career," the actions "did not target the forum." Skurla echoes that conclusion, but for a different reason. He argues that even if his alleged acts are understood to have targeted the Phoenix Eparchy and the Phoenix Bishop, such a finding would be insufficient to justify an exercise of jurisdiction in light of *Walden v. Fiore*, 571 U.S. 277, 289–90 (2014).

In *Walden*, a Georgia police officer, working with federal agents, seized almost $100,000 in cash from two professional gamblers in a Georgia airport. *Id.* at 280–81. The officer also drafted an allegedly fraudulent affidavit about the seizure that he sent to the United States Attorney's Office in Georgia. *Id.* The gamblers, who were residents of California and Nevada, filed a *Bivens* suit in the District of Nevada alleging that the officer violated their Fourth Amendment rights. *Id.* at 281; *see Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

Affirming the district court's dismissal of the *Bivens* suit on personal jurisdiction grounds, the Supreme Court explained "it is the defendant's conduct that must form the necessary connection" between the lawsuit and the forum state. *Walden*, 571 U.S. at 285. This proposition was fatal to the plaintiffs' suit in *Walden*, as the Georgia officer had "formed no jurisdictionally relevant contacts with Nevada." *Id.* at 289. He had "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada," and the lawsuit was not "tethered to Nevada in any meaningful way" aside from the plaintiff's residency. *Id.* at 288–90. Dismissal was therefore required, as the residency of the plaintiff, "standing alone, is an insufficient basis for jurisdiction." *Id.* at 286.

In the process of so holding, *Walden* expressly distinguished *Calder*. *Calder*'s jurisdictional analysis was sound, the high court explained, because it focused on the relationship between the defendants, the forum, and the litigation, "examin[ing] the various contacts the defendants had created with California (and not just with the plaintiff)," including making phone calls to California and circulating false statements in California. *Id.* at 287. Moreover, the false statements had "a California focus" because they concerned "the plaintiff's activities in California." *Id.* at 286–88. The effect those out-of-state actions had in California justified exercising jurisdiction over the *Calder* defendants. *Id.*

Burri's claims against Skurla are on all fours with *Calder*. Some of Skurla's allegedly defamatory communications—including phone calls and written correspondence—were sent to Arizona, circulated within Arizona, and had an Arizona "focus," as they concerned

Burri's activities in Arizona. Skurla's actions were therefore aimed at the forum state itself.

In addition, Skurla's acts were allegedly intended to interfere with an Arizona lawsuit and an Arizona contract. *Brainerd v. Governors of the University of Alberta*, 873 F.2d 1257 (9th Cir. 1989), establishes that if the purpose of an act is to cause harm in the forum state, the act has targeted the forum state. There, a University of Alberta faculty member, Brainerd, was accused of misusing grant funds. *Id.* at 1258. He entered a settlement agreement with the University which provided that, in exchange for his resignation, University representatives would respond to any future job-related inquiries about Brainerd with a pre-approved statement. *Id.* Brainerd then applied for and accepted a position at a college in Arizona. *Id.* After hearing unsavory rumors about Brainerd, the associate dean at Brainerd's new job called a University of Alberta administrator, Meekison, to ask about Brainerd's tenure at the school. *Id.* Meekison told the associate dean that Brainerd misused federal research funds and travel funds during his time at the University of Alberta. *Id.* Meekison also stated that he "would not hire Brainerd." *Id.* Later, Meekison exchanged letters with the provost of the Arizona college in which he refused to answer any further questions. *Id.*

After learning about these communications, Brainerd filed suit in Arizona against Meekison and the University of Alberta for breach of contract, breach of the covenant of good faith and fair dealing, defamation, and tortious inference with contractual relations. *Id.* On appeal, the Ninth Circuit reversed the district court's dismissal for lack of personal jurisdiction. *Id.* at 1260–61. The panel held that, under *Calder* and its progeny, Meekison's "communications were directed to Arizona, even though he did not initiate" the

conversations, because "where acts are performed for the very purpose of having their consequences felt in the forum state, the forum will have personal jurisdiction over the actor." *Id.* at 1259–60.

Here, Skurla communicated the statements at issue, allegedly, "for the very purpose of having their consequences felt in the forum state." The alleged purpose of the statements was to convince the Phoenix Eparchy both to terminate its Arizona employment contract with Burri and to drop the Arizona ERISA action. Thus, as in *Brainerd*, the second prong of the *Calder* effects test is met. *See Calder*, 465 U.S. at 788–89; *Dole Food Co.*, 303 F.3d at 1111.

**iii.**

We also disagree with the district court's reasoning on the final prong of the *Calder* effects test. This prong asks whether Skurla knew or should have known that his actions were likely to cause Burri harm in the forum state. *Dole Food Co.*, 303 F.3d at 1111; *Calder*, 465 U.S. at 788–89. The district court concluded that, as a Florida resident, Burri could not suffer harm in Arizona, so Skurla "would have had no reason to believe [his] actions were likely to cause [Burri] harm in Arizona." Not so.

Beginning with Burri's defamation claim: *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), establishes that defamation causes harm to "the subject of the falsehood" in the state where the defamatory material circulates, whether the subject of the statement resides there or not. *Keeton*, 465 U.S. at 776–77. In *Keeton*, a non-resident defendant circulated a magazine in the forum state that contained defamatory statements about the non-resident plaintiff. *Id.* The plaintiff was found to have suffered an injury in the forum state. Because defamation causes harm to the victim's

reputation in the forum where it circulates, "[t]he tort of libel is generally held to occur wherever the offending material is circulated." *Id.* at 777; *see also Calder*, 465 U.S. at 785. In this case, some of Skurla's statements circulated in Arizona, so he knew or should have known that his conduct would cause Burri reputational harm in Arizona.

Turning to Burri's tortious interference with contractual relations claim, *Brainerd* again controls. In *Brainerd*, the communications between Meekison and the administrators at Brainerd's new job in Arizona were likely to have a negative influence on Brainerd's employment contract. "Meekison knew the injury and harm stemming from his communications would occur in Arizona." *Brainerd*, 873 F.2d at 1259–60. The same is true here. The communications in this case were designed to undermine Burri's employment contract with the Phoenix Eparchy. Skurla knew or should have known that the communications would cause Burri harm in Arizona.

**iv.**

Skurla raises a final counterargument, one that falls outside the *Calder* framework. He argues that exercising jurisdiction over this case would be improper because the termination of Burri's contract was ultimately effectuated by non-parties, including the Pope. Causation is a merits question, not an issue relevant to the jurisdictional inquiry. Skurla may assert arguments going to the merits of Burri's causes of action at later stages of the proceeding, such as through a Rule 12(b)(6) motion for failure to state a claim. We express no view on such issues. At this time, our inquiry is focused solely on whether jurisdiction may be constitutionally maintained over this action. At this stage of the case, Burri has satisfied his burden to make a prima facie showing that Skurla's alleged acts satisfy the "purposeful

direction" component of the minimum contacts inquiry. *See Pebble Beach Co.*, 453 F.3d at 1154–56; *Calder*, 465 U.S. at 788–89.

\* \* \*

In sum, Skurla directed intentional acts at Arizona that he knew or should have known were likely to cause Burri harm in Arizona. Burri has carried his burden to establish a prima facie case that Skurla, and by extension the Eparchy of Pittsburgh, "purposefully directed" conduct at Arizona. As the district court did not address the other two components of the due process "minimum contacts" inquiry, we remand for the court to complete the jurisdictional analysis.[5]

## B.

Our analysis regarding Burri's claims against Burnett, Lach, and their respective dioceses is similar, with one important caveat. The FAC contains substantially less detail regarding the actions of Burnett and Lach. The district court did not address that important difference; its reasoning was virtually identical with respect to each of the three bishops. And its denial of Burri's motion for jurisdictional discovery rested on the same misunderstanding that undermined its analysis regarding whether there is personal jurisdiction over Skurla—that Burri, as a Florida resident, could not suffer

---

[5] In most cases where the plaintiff's allegations satisfy the purposeful direction test, the "arise out of or relate to" prong of the minimum contacts inquiry will also be satisfied. The purposeful direction test ordinarily subsumes the less-exacting "arise out of or relate to" inquiry. *See, e.g.*, *Dole Food Co.*, 303 F.3d at 1114 (holding that because purposeful direction was established, it was "obvious" that the second prong of the minimum contacts test was also satisfied).

harm in Arizona.  We therefore vacate the dismissal of Burri's claims against Burnett, Lach, and the Eparchies of Passaic and Parma; vacate the denial of Burri's motion for jurisdictional discovery; and remand so that the district court may assess these questions afresh.

The FAC contains specific allegations of statements Skurla made that were directed at Arizona and circulated within Arizona.  In contrast, although the FAC states that "the majority of the tortious conduct, events, acts, and omissions alleged in [the FAC] occurred within or were directed to Maricopa County, Arizona," and Burri's briefing before this Court maintains that statements made by each of the Defendants circulated within Arizona, the FAC does not expressly state whether Burnett and Lach directed their statements at Arizona, as opposed to directing statements at representatives of the Phoenix Eparchy when those representatives were in other places.

It may be that, at this juncture of the proceedings—where all reasonable inferences must be drawn in Burri's favor and his burden is to establish only "a prima facie showing of jurisdictional facts," *Pebble Beach Co.*, 453 F.3d at 1154 (quoting *Doe*, 248 F.3d at 922)—Burri has alleged sufficient facts reasonably to infer that some of Burnett and Lach's statements circulated within Arizona.[6]  The district court did

---

[6] We note it is not clear that in-forum direct circulation by the defendants is essential.  *Brainerd* states that "where acts are performed for the very purpose of having their consequences felt in the forum state, the forum will have personal jurisdiction over the actor." *Brainerd*, 873 F.2d at 1260.  And *Walden* demonstrates that, when determining whether a defendant purposefully directed conduct at a forum state, courts may consider whether the defendant's communications had "a [forum state] focus" in that they concerned the "plaintiff's activities in [the forum state]." *Walden*, 571 U.S. at 287–88.  It may be that, even if

not address this question, as it began from the erroneous premise that Burri could not be harmed in a state where he did not reside.

If, applying the proper analytical framework, the district court determines that the FAC's factual allegations are not sufficient to support an exercise of jurisdiction, the question will arise whether Burri should be permitted to amend his complaint, conduct jurisdictional discovery, or both. These three questions are closely intertwined. Burri's counsel stated at oral argument that, if the current record contains insufficient information to support a finding that jurisdiction is proper, Burri could amend his complaint to include pertinent facts that have recently come to light in other legal proceedings. Burri's counsel also maintains that his "limited, targeted" discovery requests are tailored to uncover additional information in support of his position, such as emails or phone calls that Burnett and Lach directed at Arizona and were circulated in Arizona.

Generally, plaintiffs should be granted leave to amend their complaints unless "it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma County*, 708 F.3d 1109, 1118 (9th Cir. 2013) (quoting *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991)). Jurisdictional discovery should be permitted "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the

---

Burnett and Lach's statements were made to individuals who were not in Arizona at the time they read or heard the statements, the statements nevertheless satisfy the purposeful direction test on the ground that Burnett and Lach knew the communications—made to Arizona residents and concerning an Arizona contract and an Arizona lawsuit—would be repeated in and have an impact in Arizona, and intended that result.

facts is necessary." *Boschetto*, 539 F.3d at 1020 (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977)). A denial of a motion for jurisdictional discovery is reviewed for abuse of discretion. *Id.* If the trial court applied an incorrect legal rule in the course of denying a motion for jurisdictional discovery, its decision must be vacated. *See United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc).

Here, the district court denied Burri's motion for jurisdictional discovery on the ground that no sets of facts could establish that Burri, a Florida resident, suffered harm in Arizona. More specifically, the court stated that "[e]ven if the proposed discovery were to reveal additional incidents in which Defendants allegedly defamed [Burri] and interfered with [his] relationship with the Phoenix Eparchy, the harm suffered by Mr. Burri occurred in Florida." Once again, that proposition is not correct. For the reasons explained with regard to Skurla, if Burnett and Lach directed statements at Arizona that were defamatory and sought to undermine Burri's contract with the Phoenix Eparchy, then Burri suffered harm in Arizona. *See supra* Part III.A.iii. The district court's denial of jurisdictional discovery therefore must be vacated. *See Hinkson*, 585 F.3d at 1261–62.[7]

In sum, we vacate the district court's dismissal of Burri's claims against Burnett, Lach, and the Eparchies of Passaic

---

[7] The district court also expressed a suspicion that Burri sought discovery on a baseless "hunch" that some of the Defendants may have committed "bad acts" while physically present in Arizona. This reasoning suggests that the district court may have believed that the Defendants needed to commit an act while present in Arizona for the court to sustain jurisdiction over Burri's suit. If so, that belief was mistaken, as we have explained. *See Dole Food Co.*, 303 F.3d at 1111; *Schwarzenegger*, 374 F.3d at 803.

and Parma, as well as the denial of Burri's motion for jurisdictional discovery.  If the district court determines on remand, applying the proper framework, that the FAC, as presently constituted, lacks sufficient factual allegations to support an exercise of jurisdiction over Burnett, Lach, and their respective dioceses, the district court should decide whether Burri should be permitted to amend his complaint, conduct jurisdictional discovery, or both.

## CONCLUSION

For the reasons stated above, we **VACATE** the district court's dismissal of Burri's claims and **REMAND** to the district court for further proceedings consistent with this opinion.  Costs are awarded to appellants.