# THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

**In Case No. 2024-0428, <u>Stephen D. Anderson & a. v. Geoffrey E. Snyder</u>, the court on July 22, 2025, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order.  See Sup. Ct. R. 20(3).  The plaintiffs, Stephen D. Anderson, Daniel J. Ethier, Sonja Fridell Pomerleau, Mac Arthur Johnson, Jr., Kathleen F. LeClair, Eric D. Lizotte, Thomas D. Mannion, Kellie M. Pitt, James A. Ryan, III, and Robin B. Saunders, appeal an order of the Superior Court (English, J.) dismissing this action on the ground that the court lacked personal jurisdiction over the defendant, Geoffrey E. Snyder.  We affirm.

The trial court's order recited the following facts.  The plaintiffs are a proposed class of New Hampshire residents who, during the relevant time period, were employed by Massachusetts-based employers.  Prior to the COVID-19 pandemic, the plaintiffs physically worked in Massachusetts either full or part time.  After the pandemic prompted the Governor of Massachusetts to declare a state of emergency, the plaintiffs worked from home in New Hampshire for their Massachusetts-based employers.

The defendant, during the relevant time period, was Commissioner of the Massachusetts Department of Revenue (Department).  In that capacity, he promulgated an emergency regulation — which became a formal rule on March 5, 2021 (the Tax Rule) — that provided:

> [A]ll compensation received for personal services performed by a non-resident who, immediately prior to the Massachusetts COVID-19 state of emergency, was an employee engaged in performing such services in Massachusetts, and who, during such emergency, is performing such services from a location outside Massachusetts due solely to the Massachusetts COVID-19 state of emergency, will continue to be treated as Massachusetts source income subject to personal income tax under M.G.L. c. 62 and personal income tax withholding.

(Quotation omitted.)  The regulation applied retroactively to March 10, 2020 and prospectively as long as the state of emergency remained in effect.  As a result, from March 10, 2020 to September 13, 2021, Massachusetts income taxes were withheld from the plaintiffs' compensation notwithstanding that they were

physically working in New Hampshire. The Department sent one of the plaintiffs a letter informing him that he was being audited and then a second letter informing him that he owed Massachusetts nonresident income tax for the year 2020. The letters were on Department letterhead, which identified the defendant as the commissioner, but did not bear his signature.

In August 2020, the New Hampshire Attorney General sent a letter to the defendant, in his capacity as the commissioner of revenue, expressing concerns about the impact of the emergency tax regulation on New Hampshire residents. In September, the New Hampshire Attorney General requested a meeting with the defendant to discuss the emergency regulation. The meeting was held, by video conference, on September 29, 2020.

The plaintiffs filed the instant action against the defendant, in his individual capacity, under 42 U.S.C. § 1983 alleging due process, equal protection, privileges and immunities, and dormant commerce clause violations. The defendant moved to dismiss, arguing that he lacked sufficient contacts with New Hampshire for the court to exercise personal jurisdiction over him. The trial court granted the motion and denied the plaintiffs' motion to reconsider. In particular, the court was unpersuaded "that the effects test articulated in Calder v. Jones, 465 U.S. 783 (1984)[,] applies to this case," but also concluded that "even if the Calder effects test did apply in this case, Plaintiffs failed to establish jurisdiction over Snyder in his individual capacity under that test."

The plaintiffs now appeal, arguing that the trial court erred in concluding that it lacked personal jurisdiction over the defendant. "The plaintiffs bear the burden of demonstrating facts sufficient to establish personal jurisdiction." Fellows v. Colburn, 162 N.H. 685, 690 (2011). "Our standard of review for rulings on motions to dismiss for lack of personal jurisdiction varies according to the case's procedural posture." Seward v. Richards, 174 N.H. 401, 406 (2021) (quotation omitted). "When, as in this case, the trial court rules upon the motion without holding an evidentiary hearing, the trial court employs a prima facie standard, and we review the trial court's decision de novo." Id. (quotation omitted). "Under the prima facie standard, the inquiry is whether the plaintiff has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." Id. (quotation omitted). "Both the trial court and we, when undertaking de novo review, must accept the plaintiff's (properly documented) proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing." Id. at 406-07 (quotation omitted). "The plaintiff's evidentiary proffers must be construed in the light most congenial to the plaintiff's jurisdictional claim and facts put forward by the defendant may be considered only if they are uncontradicted by the plaintiff's submissions." Id. at 407 (quotation omitted).

Whether a court may exercise personal jurisdiction over a defendant is determined under a two-part analysis: "First, the State's long-arm statute must

authorize such jurisdiction. Second, the requirements of the federal Due Process Clause must be satisfied." <u>N.H. Bank Comm'r v. Sweeney</u>, 167 N.H. 27, 32 (2014) (quotation omitted). Because we have consistently interpreted the New Hampshire long arm statute, RSA 510:4, I, "to grant jurisdiction whenever the requirements of the Due Process Clause of the United States Constitution are satisfied," <u>Staffing Network v. Pietropaolo</u>, 145 N.H. 456, 458 (2000), "the due process analysis is normally dispositive of the matter," <u>Sweeney</u>, 167 N.H. at 32. <u>See</u> RSA 510:4, I (2010). Accordingly, we turn to the due process analysis.

"Under the Federal Due Process Clause, a court may exercise personal jurisdiction over a non-resident defendant if the defendant has minimum contacts with the forum, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." <u>Seward</u>, 174 N.H. at 407 (quotation omitted). Only the issue of specific jurisdiction is before us, because the plaintiffs do not argue that the trial court had general jurisdiction over the defendant. <u>See</u> <u>id</u>. (explaining difference between general and specific jurisdiction).

To determine whether exercising specific personal jurisdiction over the defendant comports with due process, we examine whether: "(1) the contacts relate to the cause of action; (2) the [defendant has] purposefully availed [himself] of the protection of New Hampshire's laws; and (3) it would be fair and reasonable to require the [defendant] to defend the suit in New Hampshire." <u>Sweeney</u>, 167 N.H. at 33. "Each factor must be evaluated on a case-by-case basis, and all three factors must be satisfied for the exercise of jurisdiction to be constitutional." <u>Id</u>.

The trial court found neither of the first two factors satisfied, and the plaintiffs challenge both findings. They first argue that because "<u>Calder</u> applies broadly to cases involving statutory claims sounding in tort, including § 1983 claims for constitutional violations," the trial court erred in finding the <u>Calder</u> effects test inapplicable. For purposes of deciding this case only, we assume, without deciding, that the <u>Calder</u> effects test applies and we accept the plaintiffs' general formulation of that test, as stated by the United States Court of Appeals for the Ninth Circuit in <u>Burri Law PA v. Skurla</u>, 35 F.4th 1207 (9th Cir. 2022). Accordingly, we assume that the "purposeful availment" factor would be satisfied by a finding of "purposeful direction" that satisfies the <u>Calder</u> test. <u>See</u> <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 803 (9th Cir. 2004) (noting that the Ninth Circuit has interpreted <u>Calder</u> as standing "for the proposition that purposeful availment is satisfied even by a defendant whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state" (quotations omitted)). As stated in <u>Burri Law</u>, "[t]he <u>Calder</u> effects test . . . establishes that if a defendant: (1) commits an intentional act, (2) expressly aimed at the forum state, that (3) causes harm the defendant knew was likely to be suffered in the forum state, then the defendant has purposefully directed conduct at the forum state." <u>Burri Law</u>, 35 F.4th at 1213.

3

The plaintiffs argue that the defendant "established minimum contacts with the state [under the Calder effects test] by intentionally aiming the promulgation and enforcement of his unconstitutional tax scheme at New Hampshire, knowing it would cause overwhelmingly more harm there than any other state." The plaintiffs argue that the trial court erred in finding that the defendant did not expressly aim his conduct toward New Hampshire because the court "misconstrue[d] the plaintiffs' proffers, and fail[ed] to construe them, as required, in the light most congenial to the plaintiffs' jurisdictional claim." (Quotation omitted.) Specifically, the plaintiffs argue that the court erred by: (1) "attributing the defendant's unconstitutional conduct to the Department"; and (2) "concluding that the Tax Rule was not principally designed to target New Hampshire." We need not address the first contention because we disagree with the second.

The trial court found that the Tax Rule "was not aimed solely at New Hampshire residents. Rather it applied to all out[-]of[-]state individuals working for Massachusetts[-]based companies that physically worked in Massachusetts immediately prior to the Massachusetts COVID-19 state of emergency." We agree. By its terms, the Tax Rule applies to all affected employees performing "services [for their Massachusetts-based employers] from a location outside Massachusetts," not just to those affected employees who reside in, or perform such services from, New Hampshire. (Quotation omitted.)

The plaintiffs nevertheless contend that "[e]ven though the Tax Rule does not expressly identify New Hampshire as its primary target, the circumstances surrounding its promulgation reveal that the defendant intended that the Tax Rule would cause harm in New Hampshire overwhelmingly more than any other state." They assert that "New Hampshire residents constituted nearly 40% of Massachusetts' nonresident income taxpayer base" and "94% of all nonresident commuters to Massachusetts from states without personal income taxes—i.e., the only states whose residents actually suffered from the effects of the Tax Rule." They further assert that the defendant had direct communications with the New Hampshire Attorney General in which the latter "informed the defendant that the Tax Rule unfairly targeted New Hampshire residents."

The plaintiffs' arguments fail to persuade us that the defendant purposefully aimed or directed promulgation of the Tax Rule at New Hampshire. Their "allegations, even if true, only relate to the foreseeability of causing injury in [New Hampshire], which is not a 'sufficient benchmark' for specific jurisdiction." Panda Brandywine Corp. v. Potomac Elec. Power Co., 253 F.3d 865, 869 (5th Cir. 2001) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)). "[F]oreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum." McFadin v. Gerber, 587 F.3d 753, 762 (5th Cir. 2009) (quotation omitted). Furthermore, to the extent the Tax Rule caused "overwhelmingly more [harm in New Hampshire] than any other state" because other states both have a personal income tax and

provided tax credits to their citizens to offset the Tax Rule's impact, any such disproportional harm is attributable not to voluntary acts by the defendant, but to acts by those other states. See Seward, 174 N.H. at 412 (noting that "[p]urposeful availment requires both foreseeability and voluntariness" and that "[v]oluntariness requires that a defendant's contacts with the forum state [must] proximately result from actions by the defendant" and "not [be] based on the unilateral actions of another party" (quotations and brackets omitted)).

The plaintiffs next contend that the defendant expressly aimed his efforts to enforce the Tax Rule at New Hampshire. They argue that the trial court erred in concluding that the two letters the defendant sent to one of the plaintiffs in New Hampshire were insufficient to establish minimum contacts with the state. They contend that "[t]he defendant's correspondence cannot be divorced from his overall scheme to cause harm in New Hampshire," and, in particular, argue that the trial court erred in finding Stroman Realty, Inc. v. Wercinski, 513 F.3d 476 (5th Cir. 2008), analogous to this case.

Stroman involved an effort by the Commissioner of the Arizona Department of Real Estate to enforce, against a real estate broker located in Texas, an Arizona law requiring nonresident brokers "who transact business involving either Arizona citizens or real property located in Arizona" to be licensed by the commissioner. Stroman, 513 F.3d at 480. The broker challenged that effort in a suit brought in Texas, and the commissioner moved to dismiss on grounds including lack of personal jurisdiction over her. Id. at 479, 481. The trial court granted the motion, albeit on a different asserted ground. Id. at 481. The Stroman Court affirmed dismissal on the alternative ground of lack of personal jurisdiction, id. at 489, concluding that the defendant lacked minimum contacts with the forum when "the totality of the Commissioner's contacts with Texas involves a cease and desist order and correspondence with Stroman's attorneys," id. at 484. In particular, the court rejected the plaintiff's argument that jurisdiction could be found under the Calder effects test. Id. at 485. The court concluded: "By seeking to regulate Stroman's activities involving Arizona residents or property, the Commissioner is not 'expressly aim[ing]' her actions at Texas. Rather, her intent is to uphold and enforce the laws of Arizona." Id. at 486 (quoting Calder, 465 U.S. at 789).

The plaintiffs attempt to distinguish Stroman on the basis that the Arizona commissioner's contacts with Texas "arose out of Stroman's unilateral activities," whereas here, jurisdiction arises from "the defendant's own intentional conduct." That conduct, the plaintiffs argue, differed from the Arizona commissioner's conduct because the defendant here sought not to "uphold and enforce the laws of [Massachusetts]," id., but "[r]ather, he intended to change Massachusetts' laws to protect its budgetary expectations."

The plaintiffs' argument, however, actually highlights this case's similarity to Stroman, particularly when contrasted with a case in which the United States

Court of Appeals for the Fifth Circuit found the minimum contacts requirement satisfied, in part, by a cease and desist letter sent by the defendant.  See Defense Distributed v. Grewal, 971 F.3d 485, 491-92, 496 (5th Cir. 2020).  In distinguishing Stroman, the Grewal Court noted:

> First, many of the plaintiffs' claims are based on Grewal's cease-and-desist letter.  In contrast, Stroman's claim was that "Arizona's attempted exercise of regulatory jurisdiction to license timeshare resales violated the Commerce Clause by discriminatorily and unduly burdening nonresident participation in the interstate secondary timeshare market."  Stroman, 513 F.3d at 481.  Stroman's claim, in other words, was more a product of Arizona's regulatory scheme than it was the cease-and-desist letter itself.

Grewal, 971 F.3d at 492.  So too here.  The plaintiffs' claims are a product of the defendant's allegedly "unconstitutional tax scheme," rather than the letters by which he allegedly enforced that "scheme."  Accordingly, we are unpersuaded by the plaintiffs' attempts to distinguish Stroman.  We conclude that the defendant's letters do not satisfy the purposeful availment factor.  See Skillsoft Corp. v. Harcourt General, 146 N.H. 305, 309-10 (2001) (holding that the defendants did not purposefully avail themselves of the protections of New Hampshire law by sending "letters [that] were designed to inform the plaintiffs that their actions violated the laws of another State").

For the foregoing reasons, we conclude that the plaintiffs have failed to demonstrate satisfaction of the purposeful availment factor in the due process analysis.  See Sweeney, 167 N.H. at 33-34.  Because all three factors must be satisfied, id., we need not reach the plaintiffs' remaining arguments.

Affirmed.

DONOVAN and COUNTWAY, JJ., concurred; FRIZZELL, J., superior court justice, specially assigned under RSA 490:3, II, concurred.

**Timothy A. Gudas,
Clerk**