NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 17 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RASHID KAMBAROV, | No. 25-1390 |
| Plaintiff - Appellant, | D.C. No. 3:23-cv-01103-YY |
| v. | |
| QUALITY COUNTS, INC., | MEMORANDUM* |
| Defendant - Appellee, | |
| and | |
| FIRST ADVANTAGE BACKGROUND SERVICES CORP., | |
| Defendant. | |

Appeal from the United States District Court
for the District of Oregon
Amy M. Baggio, District Judge, Presiding

Submitted April 15, 2026**
Portland, Oregon

Before: OWENS, VANDYKE, and SUNG, Circuit Judges.

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Rashid Kambarov appeals from the district court's judgment dismissing his Fair Credit Reporting Act (FCRA) claim against Quality Counts, Inc., for lack of personal jurisdiction. We have jurisdiction under 28 U.S.C. § 1291, and we vacate and remand.

We review de novo the district court's conclusion that it lacks personal jurisdiction. *Briskin v. Shopify, Inc.*, 135 F.4th 739, 749–50 (9th Cir. 2025) (en banc). "[W]here, as here, the motion [to dismiss for lack of personal jurisdiction] is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts" to survive the motion to dismiss. *Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020) (citation and internal quotation marks omitted). We must "take as true all uncontroverted allegations in the complaint and resolve all genuine factual disputes in the plaintiff's favor." *Id.*

To determine whether personal jurisdiction exists, we apply Oregon's long-arm statute, which "confers jurisdiction to the extent permitted by due process." *Gray & Co. v. Firstenberg Machinery Co., Inc.*, 913 F.2d 758, 760 (9th Cir. 1990) (per curiam); *see also* Fed. R. Civ. P. 4(k)(1)(A); Or. R. Civ. P. 4L. "Due process … requires that non-resident defendants have sufficient 'minimum contacts' with the forum state such that exercising jurisdiction would not offend 'traditional notions of fair play and substantial justice.'" *Burri Law PA v. Skurla*, 35 F.4th 1207,

1212 (9th Cir. 2022) (citation omitted).  We analyze specific personal jurisdiction under a three-part test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Briskin*, 135 F.4th at 750–51 (citation omitted).  To determine whether a defendant purposefully directed conduct at the forum state, we apply the "effects" test drawn from *Calder v. Jones*, 465 U.S. 783, 788–89 (1984).  Under that test, purposeful direction is satisfied "if a defendant: (1) commits an intentional act, (2) expressly aimed at the forum state, that (3) causes harm the defendant knew was likely to be suffered in the forum state." *Burri Law*, 35 F.4th at 1213.

1.  The first element of the *Calder* effects test is satisfied because Quality Counts committed an intentional act.  An act is "intentional" if the actor has "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 806 (9th Cir. 2004).  Here, the operative complaint alleges that Quality Counts "completed [an] employment report about [Kambarov]," sold

the report to Elwood Staffing, and "published inaccurate information about [Kambarov]." These intentional acts satisfy the first element of the *Calder* effects test. *See, e.g.*, *id.*

2. The second element of the *Calder* effects test is satisfied because Quality Counts expressly aimed the dissemination of the allegedly false report at Oregon. The contents of the report concerned whether an Oregon state court validly convicted an Oregon resident of a felony. *Cf. Calder*, 465 U.S. at 788 ("The allegedly libelous story concerned the California activities of a California resident."). The report undermined Kambarov's eligibility for employment with an Oregon branch office of Elwood Staffing in Oregon. *Cf. id.* ("[The allegedly libelous story] impugned the professionalism of an entertainer whose television career was centered in California."). The report was drawn from Oregon sources, namely, the records of the Oregon state courts. *Cf. id.* ("The article was drawn from California sources ...."). And the only harm that Kambarov suffered—the termination of his employment and the related emotional harm—was suffered in Oregon. *Cf. id.* at 789 ("[T]he brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California."). "In sum, [Oregon] is the focal point both of the [report] and of the harm suffered." *Id.*; *see also Burri Law*, 35 F.4th at 1214–15.

While Elwood Staffing is headquartered in Indiana, an Oregon office of Elwood Staffing requested the report, and Quality Counts provided that office with access to the report. That Oregon office "had access directly … to Quality Counts'[s] portal," which means that Elwood Staffing employees at the Oregon office would have "[been] able to sit at their desk and directly log into th[e] portal" to access the report. Contrary to the district court's conclusion, in no meaningful sense was the report "directed toward" Indiana. *Burri Law*, 35 F.4th at 1210).

3. The third element of the *Calder* effects test, which requires that the defendant "knew or should have known that his actions were likely to cause [the plaintiff] harm in the forum state," is likewise satisfied here. *Burri Law*, 35 F.4th at 1215. The record shows that Quality Counts knew that Kambarov lived in Oregon and that he had applied for a job with Elwood Staffing in Oregon. And because Quality Counts effectively published the false report in Oregon, Quality Counts knew or should have known that the report would cause Kambarov reputational harm in Oregon. *See id.*

4. Because the district court did not address the second and third *Briskin* factors, we vacate the district court's dismissal and "remand for the court to complete the jurisdictional analysis." *Id.* at 1216–18.

**VACATED AND REMANDED.**[1]

---

[1] Costs are to be taxed against the appellee.